## FIDELITY & CASUALTY CO. OF NEW YORK v. STACEY'S EX'RS.

(Circuit Court of Appeals, Fourth Circuit. February 6. 1906.)

### No. 626.

INSURANCE—ACTION ON ACCIDENT POLICY—ACCIDENTAL DEATH.

The holder of a policy, insuring him against disability or death "resulting directly, and independently of all other causes, from bodily injuries sustained through external, violent and accidental means," committed an assault and battery on a person who made no resistance, and, in striking such person in the face, injured his hand, and a few days later died from the effects of blood poisoning which developed in the wound. *Held*, that such injury, which was the direct means causing the death of the insured, being the natural result of a voluntary act committed when he was in full possession of his mental faculties, was not "accidental," within the meaning of the policy, and did not give a right of action thereon to recover for the resulting disability or death.

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, § 1162.

Accident insurance—Risks and causes of loss, see note to National Accident Society of New York v. Dolph, 38 C. C. A. 3.]

In Error to the Circuit Court of the United States for the District of South Carolina.

For opinion below, see 137 Fed. 1012.

C. P. Sanders and T. P. Cothran (Sanders & Depass and W. S. Hall, on the brief), for plaintiff in error.

H. J. Haynsworth (J. C. Jeffries, on the brief), for defendants in error.

Before PRITCHARD, Circuit Judge, and PURNELL and KELLER, District Judges.

PRITCHARD, Circuit Judge. This is an action at law based on what is known as an accident insurance policy, and was brought by the defendants in error against the Fidelity & Casualty Company of New York, to recover $5,000 on an accident policy which the plaintiff in error had issued to Frederick G. Stacey, the testator of the defendants in error.

The complaint alleges that, on the 23d day of February, 1903, the plaintiff in error issued to Frederick G. Stacey, the testator of the defendants in error, its policy of insurance, and thereby insured the said Stacey "against disability or death resulting directly, and independently of all other causes, from bodily injuries sustained through external, violent and accidental means (suicide, sane or insane, not included), and it thereby promised to pay to the executors, administrators, or assigns of the said Frederick G. Stacey, the sum of $5,000 if death should result within 90 days from said injuries."

It also alleges that while said policy was still in force the said Stacey departed this life, and that his death resulted directly, and independently of all other causes, from bodily injuries sustained through external, violent, and accidental means, to wit: an injury to his hand which was received on or about June 8, 1904. The answer of the plaintiff in error admitted that it issued the policy mentioned in the complaint, and that the said Stacey departed this life while the policy was in force. It, however, denied the other allegations of the complaint and set up the defense that the death of the said Stacey was caused or brought about by a violent act of his while he was committing an assault and battery on one of the citizens of South Carolina. The case was tried, resulting in a verdict and judgment for defendants in error.

In order to comprehend the questions involved in this case, it is necessary to recur to the testimony upon which defendants in error base their cause of action. The testimony, about which there is no contention, is as follows:

"Stacey was president of the National Bank of Gaffney. He and one Porter had some business transaction in the bank, during which Porter charged Stacey with having required him upon a former occasion to accept less then the face value of a certain check issued by J. A. Carroll & Company (of which firm Stacey was a partner), in the conduct of their lime business, and that he (Stacey) would not pay his debts, specifying one Jones as the party whom Stacey owed and would not pay. Stacey then insisted that Porter accompany him to Jones' place of business, where he could face Jones with the charge. On the way they met W. C. Carpenter, another member of the firm of J. A. Carroll & Co. Then this conversation occurred:

"Stacey: 'That man says that we beat him out of some money.'

"Carpenter: 'How?'

"Stacey: 'He says he had a lime check and Carroll discounted it 10 per cent.'

"Carpenter: 'I don't think so. Those checks are always at par.'

"About that time Carroll, the other member of the firm, came in sight and was about to pass them, when Stacey called him to come to where they were talking. When he got to them, Stacey repeated to Carroll, in substance, what he had said to Carpenter. Carroll denied it, making about the same explanation as Carpenter had made. Stacey then said: 'I knew that he was telling a lie about it.' Porter replied: 'You are another liar.' As soon as Porter said that, Stacey struck him with right hand, staggering him, and immediately followed it up with a blow from his left hand upon or about the mouth, knocking him down. Porter made no resistance, but got up and walked off. Stacey immediately looked at his finger and showed it to Carroll, where he had cut his knuckle. He gave it some immediate attention, but it grew steadily worse, developing into blood poison, followed by amputation of the arm and death, on the 28th of June, 1904."

This being an action at law, if the defendant in error is entitled to recover at all, it must be upon his contract of insurance, and not otherwise. The contract provides for the liability of the plaintiff in error for the death of the insured, provided that such death results "directly, and independently of all other causes, from bodily injuries sustained through external, violent and accidental means." According to the evidence, the insured, while in a fit of temper on account of something that Porter had said about him in connection with a transaction at his bank, accosted him on the street and engaged in a conversation, and, at a time when Porter was making

no demonstration of violence, assaulted him on the face, first with his right hand and then with his left; the last blow landing in Porter's mouth, coming in contact with one of his teeth, thereby causing a slight abrasion of the skin of one of the fingers of the insured. Subsequently thereto the finger became infected, which resulted in blood poison, and from the effect of which he died in about 20 days thereafter. It thus appears that the insured, at a time when he was in full possession of his mental faculties, accosted Porter and engaged in a controversy in consequence of which he committed an assault on the body of Porter, evidently for the purpose of punishing him for what had just occurred between them. Everything connected with the transaction clearly indicates that the insured intended to do exactly what he did on that occasion. Therefore the injury which he received at the time was the natural and logical result of an intentional act on his part. He was a man of intelligence, and it must be presumed that he knew that in making an assault with his fist in the manner described he would probably sustain more or less injury to himself.

If, in this instance, it had been shown that, instead of striking an individual, the insured had deliberately struck a tree or a wall with his fist, it could not have been successfully contended that an injury received in consequence thereof would be due to an accident. It would be doing that which was intended, and as a result of which he might have reasonably inferred that he would sustain an injury. Or if the wound which the insured received on his knuckle had been only of such a character as to disable him temporarily, it could not be insisted that, having received the injury, under the circumstances, he would be entitled to compensation for loss of time sustained thereby. In order to enable one to recover in an action based on an accident policy on account of accidental injury, it must be shown that the insured would be entitled to recover for the original injury; and, unless it appears that such original injury was due to an accident then known, or the results flowing therefrom could be imputed to the result of an accident, recovery could not be had. All other results are accidental causes disconnected with the original cause, and cannot be said to flow therefrom.

In the case of Mutual Accident Ins. Co. v. Barry, 131 U. S. 100, 9 Sup. Ct. 755, 33 L. Ed. 60, it appeared that three men jumped from a platform. Two of them alighted without injury. The third, observing that his comrades had alighted in safety, and feeling that he would incur no risk in doing that which others had done without injury, also jumped, and received an injury from which he died. In that case the court held that the death of the deceased was caused by an accident; that the injury which resulted to him was unforeseen and unexpected, and therefore an accident. But in the case at bar the insured knew by common observation and experience that he would likely receive an injury by assaulting his antagonist in the manner he did. The injury which the insured received, under the circumstances, cannot be said to be unusual in its character. What is an accident? Webster defines it to be:

143 F.—18

"An event that takes place without one's foresight or expectation; an event that proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected."

It cannot be contended that the action of the insured in first striking Porter was beyond his control, or that the injury to his hand was "an event that took place without his foresight or expectation," for he was a man of intelligence and must have known that in bringing his fist in violent contact with the face or head of another he was liable to bruise his knuckles and break the skin of his hand. Nor can it be contended that such injury proceeded from an unknown cause, for he knew that men have teeth and bones in their faces and heads, the striking of which with the bare hand will produce just such an injury as resulted to him. The breaking and bruising of the skin of his hand was not an unusual effect of a known cause, and therefore unexpected, for nothing is more usual in such encounters than for assailants to have their knuckles and fingers sprained, bruised, and sometimes broken. It is insisted by counsel for defendant in error that the insured did not expect to strike Porter in the mouth, that striking the teeth was an accident, and that it cannot be presumed that he might have reasonably expected to receive the injury that followed. There is nothing in the record to support this contention; but, on the other hand, the evidence shows that the insured was very angry, and that he was not content with striking Porter with his right hand, but he immediately struck him a second blow with his left hand, and it does not appear that he intended to strike any particular part of his face.

There is a well-defined distinction between a death resulting from an accident and one resulting from accidental means. As is well said in 3 Joyce on Insurance, § 2863, p. 208:

"A person may do a certain act the result of which act may produce unforseen consequences, and may produce what is commonly called accidental death, but the means are exactly what the man intended to use, and did use, and was prepared to use. The means were not accidental, but the result might be accidental."

In the case of Fedar v. Assurance Society (Iowa) 78 N. W. 252, 43 L. R. A. 693, 70 Am. St. Rep. 212, the injury received resulted from an artery that was ruptured while the insured was reaching over a chair to close the window shutters. In that case the evidence showed that he did not fall, slip, or lose his balance. He did nothing which he did not foresee or plan, except the rupture of the artery. This was held not to be an accidental cause, within the meaning of the terms used in an accident policy. Among other things the court said:

" * * * Although a result may not be designed, foreseen, or expected, yet, if it be the natural and direct effect of acts voluntarily done, or of conditions voluntarily assumed, it cannot be said to be accidental."

In the case of Accident Co. v. Reigart (Ky.) 23 S. W. 191, 21 L. R. A., 651, 42 Am. St. Rep. 374, in discussing this phase of the question, the court, said:

"They were not attempting to restrict their liability to a particular kind of accidents, but were guarding the contract by the use of such terms as would prevent liability for injuries not originating from accidental causes. * * *"

The immediate cause of the insured's death was disease, to wit, blood poisoning. The company did not undertake to insure against blood poisoning or any other disease. But the fact that it had not insured against disease would not be a good defense in this case, if it could be shown that the blood poisoning of which the deceased died was the direct result of accidental means. Therefore, inasmuch as it is not shown that the disease which caused the insured's death was the direct result of accidental means, this case does not come within the class of cases contemplated in the insurance clause which under-takes to insure against "external, violent and accidental means."

In the case of Ass'n v. Smith, 85 Fed. 404, 29 C. C. A. 226, 40 L. R. A. 653, the court said:

"In such a case, the disease is an effect of the accident, the accidental means produced and used by the original moving cause to bring about its fatal effect, a mere link in the chain of causation between the accident and the death, and the death is attributable not to the disease but to the causa causans, to the accident alone. * * *"

Unless it could be shown that the original cause to which the disease can be traced was "accidental means," then the disease from which the insured died would be a subject against which the company did not insure.

In the Case of Isitt, 22 Q. B. 504; cited in Delaney v. Modern Accident Club (Iowa) 97 N. W. 91, 63 L. R. A. 607, this distinction is clearly laid down. In that case the insured had received an accidental injury and while in a debilitated condition resulting therefrom, contracted a cold which developed into pneumonia resulting in death. It was held to be a death from accidental causes, and, in discussing the question of liability, the court said:

"The question of law is then whether or not, as a matter of law, the chain of circumstances ought to be taken into consideration as 'effects' under this insurance. Construing, as I do, the terms of insurance as meaning that injury must be immediately caused by the accident, but that death need not be immediately caused by the injury, I answer this question in the affirmative."

In that case the original cause was the result of accidental means, in consequence of which the human system was left in such a weak and debilitated condition that it could not resist the disease to the extent that it could have done had it not been for such condition which was caused by accidental means. Therefore, it was an easy matter to trace the immediate cause from which death followed directly to the cause in the first instance.

In view of the facts in this case we are of opinion that the injury received in the first instance was not due to an accident, and therefore the results which flowed therefrom cannot be said to be due to an accidental cause. Such being the case, the court below should have instructed the jury that there was not sufficient legal evidence upon which to base a finding in favor of the defendants in error, and

should have directed them to return a verdict in favor of the plaintiff in error. The court erred in refusing to instruct the jury to that effect.

The judgment of the Circuit Court is reversed, and the case remanded to that court with instructions to set aside the verdict and award a new trial, and to proceed thereafter in conformity with the views herein expressed.

Reversed.