[S. F. No. 14002. In Bank.—January 28, 1932.]

EDWINA WATSON GRAY, Appellant, v. WESTERN STATES LIFE INSURANCE COMPANY, Respondent.

Leicester & Leicester for Appellant.

Hartley F. Peart, Sylvester J. McAtee, T. G. Crothers and Charles M. Frey for Respondent.

THE COURT.—A hearing was granted in this case after decision by the District Court of Appeal, First Appellate District, Division Two. After a careful study of the record, we are satisfied with the opinion rendered therein by Mr. Justice Sturtevant, and adopt it as the opinion of this court. It reads as follows:

"As the surviving widow of John R. Gray, deceased, the plaintiff commenced an action against the defendant to recover on the double insurance clause in a policy written by the defendant. The action was tried in the trial court before the court sitting without a jury. The court made findings in favor of the defendant and from a judgment entered thereon the plaintiff has appealed and has brought up a bill of exceptions.

"Among the findings appear the following: 'I. That plaintiff is the widow and surviving wife of John R. Gray, deceased. II. That the defendant, Western States Life Insurance Company, is and at each and all of the dates and times mentioned in the complaint as amended, was a corporation formed and existing under the laws of the State of California and engaged in and doing the business of life and accident insurance. III. That all of the allegations of Paragraph III (the execution and delivery of the policy) of plaintiff's complaint as amended are true with the exception that said policy or contract of insurance also provided that said double indemnity should not apply if the death of the insured resulted from illness of any kind. The court finds the following special benefit provisions and conditions were attached to and contained in and made a part of the said contract or policy of insurance: "Upon receipt

of due proof, . . . that the death of the insured occurred . . . as the result, directly and independently of all other causes, or bodily injury effected solely through external, violent and accidental means, . . . the company will pay double the face amount of the policy making $20,000 instead of the face amount of the policy. Neither the Double Insurance Benefit nor the Triple Insurance Benefit nor the Insurance of the Beneficiary shall apply if the death of the Insured . . . resulted from self-destruction, whether sane or insane; from any violation of law by the deceased; . . . " and with the further exception, and it is not true that in consideration of a further and additional annual premium paid by the said John R. Gray the defendant included and/or inserted in its said policy any provision including double or any insurance in case of death from any accident. IV. That said John R. Gray paid all premiums due or payable upon or under said policy prior to and up to the time of the death of the said John R. Gray. That said policy at the time of the death of said John R. Gray continued to be and was in full force and effect. V. That all of the allegations of Paragraph V of said complaint are true except that it is not true that the death of said John R. Gray occurred as the or any result, directly and/or independently of all other causes of bodily injuries effected solely or at all through external, violent and accidental means; and except further that it is not true that the plaintiff furnished to the defendant due or any proof that the death of the assured occurred as the result directly and independently of all other causes of bodily injuries effected solely through external, violent and accidental means. VI. That said John R. Gray was born on the 27th day of August, 1883. That on the 21st day of September, 1927; the said John R. Gray died at the said City and County of San Francisco. That at the said City and County of San Francisco and on the said 21st day of September, 1927, the said John R. Gray voluntarily, wilfully and without provocation assaulted one Edwin A. Hough by blows with his fist and that said Edwin A. Hough in endeavoring to protect himself and in resisting such assault by the said Gray and in self-defense, struck the said Gray, causing him to fall to the ground whereby the skull of the said Gray was fractured causing his death on said

day. That the said death of the said John R. Gray was not accidental within the meaning nor under the provisions of said policy and was not the result directly and independently of all other causes of bodily injury effected solely through external, violent and accidental means, but on the contrary the said Gray as aforesaid then and there did make an unprovoked and unwarranted assault upon the said Hough by striking the said Hough in the neck with his fist and did use profane and threatening language towards said Hough and the said Hough in self-defense and to protect himself from said assault did strike the said Gray causing the said fall and death of the said Gray. That the death of said Gray did not result from accidental means but on the contrary did result from means voluntarily provoked by the said Gray. VII. The court finds that it is true that the death of said John R. Gray directly resulted from a violation of law by the said Gray, to-wit: from and as a result of an assault and battery committed without provocation by said Gray upon the person of one Edwin A. Hough. VIII. That the death of said Gray did not result from self-destruction or from a state of war or insurrection or from riding or being in or upon any submarine or aerial device or conveyance or from police duty in any military, naval or police organization, or from physical or mental infirmity or directly or indirectly from illness or disease of any kind. XI. . . . and the court finds as a fact that the death of said John R. Gray did not occur as the result directly and independently of all other causes of bodily injuries effected solely through external, violent and accidental means. XII. . . . the court finds as a fact that said Gray made an assault upon said Hough, by reason of a grievance which he held and cherished against the said Hough and because of his belief that said Hough had assisted the members of the police department of the City and County of San Francisco, State of California, in finding the assured on or about the 8th day of September, 1927, and causing him to return to his home from which he had been absent without the knowledge of his wife as to his whereabouts for a period of about three or four days.'

''The plaintiff for the purpose of clearly presenting her points divides the incidents immediately preceding the death of her husband into 'episodes'. We will attempt the same.

On or about the 5th day of September, 1927, Gray absented himself from his home and for three or four days following that date his whereabouts were unknown to his family. On the 8th of September, 1927, he was located at Canary Cottage on the beach of San Francisco by Thomas McInerney, a police officer. The officer induced Gray to return to his home. As we proceed it will be noted that Gray was of the opinion that Edwin A. Hough had given the police information as to his whereabouts and that such information led to the interview between Officer McInerney and Gray. On the evening of the 21st of September, 1927, Gray and his family took a guest to the Southern Pacific depot and after the train left the Grays returned in their automobile. When the automobile was near Union Square Gray stepped out of the automobile, giving directions to his son to call for him at 11 p. m. A short time thereafter Gray crossed from the northerly side of Geary street to the sidewalk in front of Marquard's restaurant and commenced a conversation with Hough. He invited Hough to take a walk. (Episode One). Thereupon the two walked west along the southerly sidewalk of Geary street to the intersection of Shannon street. There they turned down Shannon street toward O'Farrell street. The witness Hough testified that when they had gone about a fourth of a block between Geary and O'Farrell, Gray struck him with his fist and knocked him down. At about the same time Gray complained to Hough because Hough had disclosed to the police Gray's whereabouts as we have mentioned above. After being knocked down Hough arose to his feet and the two men had some conversation which resulted in their proceeding down Shannon street. (Episode Two.) They had not as yet entered O'Farrell street when, as Hough testified, Gray knocked him down again. For the second time Hough arose and after some further talk the two men continued on their way down to O'Farrell street and thence easterly to the northwest corner of Taylor and O'Farrell streets. (Episode Three.) At the corner just mentioned there is a hydrant. All of the witnesses agree that the two men stood near that hydrant and indulged in some loud talk. Some of the witnesses testified that there was a scuffle in the nature of a wrestle. Several of the witnesses testified that blows were struck. Some of the witnesses testified that Hough struck Gray and knocked him

down. Others testified that Gray struck Hough and knocked him down. Those who testified that a man was knocked down further testified that the man got up and leaving the hydrant started directly across Taylor street toward a filling station located on the opposite side of the street. In this connection they stated that the individual testified that the other man started up Taylor street toward Geary street. That he did not go but about ten feet when he turned (Episode Four) and followed Gray out into the street. That that man was Hough. That Hough continued on his course until he came up to Gray (Episode Five) and as soon as he reached him struck Gray one blow, knocking him backwards down hill and that the back of Gray's head hit on a street car track, causing a fracture from which Gray died. Commencing the story again at the hydrant, the witness Hough testified that, while he and Gray stood there, quarreling ensued and that Gray struck him twice, but that he did not fall down. However, to avoid trouble, that he stepped out into the street toward the gas station and had reached the median line of the street when Gray followed him up and, as Gray approached him, Hough put up his fist to protect himself and the fist came in contact with Gray's cheek. Whereupon Gray receded, fell back, and as he was falling Hough tried to catch him, but he nevertheless fell back on the track and received the injury from which he died. Hough estimated the time, elapsing between the meeting at Marquard's and the fall in Taylor street, as between fifteen and twenty minutes. After leaving the hydrant the acts of the parties are not very clear. Sanford and Butler each speak of Gray having a hand up. Each stated his conclusion that Gray had a hand up in defense. Hough did not testify that Gray had a hand up, but contented himself by saying that Gray was again approaching him and that he, Hough, put up his fist. Commencing with the meeting in front of Marquard's and thence to the transactions had at the hydrant no witness gave any testimony except the witness Hough. The witness Williams testified as to what occurred at the hydrant and what took place out in the middle of Taylor street. The witness Spiliotis did the same. The witness Butler did the same. The witness Sanford heard the quarreling, but did not see Hough and Gray until they were out in the middle of Taylor street. These witnesses were all

called by the plaintiff. The witness Hough was examined and cross-examined as to all the facts. The defense also called Leo Ferriter, who testified that he saw the men quarreling at the hydrant. At that place Gray had one hand on the hydrant and with his other hand he was swinging on Hough. Later he saw the two men advance into · Taylor street. At that time the witness was entering the candy store. Later when he looked around Gray was down on his back in Taylor street. He testified that when they were standing at the hydrant neither one was knocked down. In another place in his testimony he stated that when the men left the hydrant Hough started up Taylor street toward Geary. The testimony of this witness is strong proof that episode five followed almost instantly after the episode at the hydrant.

█ "In their first point the plaintiff contends that the findings are not supported by the evidence. In presenting that point she is at great pains to set forth the testimony given by the witnesses Williams, Spiliotis, Sanford and Butler. She urges most earnestly that each of those witnesses told the truth and that each of those witnesses was fully informed on each and every fact to which he testified. This position is not sustained by other portions of the record. As recited above the witness Sanford did not see the actors until Gray and Hough were out in the middle of Taylor street. The witness Butler was not known to have seen anything until the litigation was on trial. Then he came forward and among other things he testified that Hough and Gray passed him when all three were on the southwest corner of Taylor and O'Farrell streets. That statement is in conflict with the testimony of each and every other witness. No other witness at any time during the evening saw either Gray or Hough on that side of O'Farrell street. . Williams and Spiliotis each told a story that is so strikingly the same that as one reads the record it is difficult to tell whether he is reading the testimony given by Williams or the testimony given by Spiliotis. Very soon after the death of Gray representatives of the police department and representatives of the defendant corporation commenced to investigate the incident. Those investigators called on Williams and also called on Spiliotis. To the question as to what either of those persons had seen both Williams and Spiliotis stated

that they had not seen any part of the actions of Gray or Hough. The defendant called Detective Page and examined him as to the statements made to him by both Williams and Spiliotis. On cross-examination in answer to questions propounded by counsel for the plaintiff that witness testified that at the time of testifying he was not able to state positively that the persons he interviewed were the witnesses Spiliotis and Williams. Nevertheless that officer's testimony was that he went to the hospital a few minutes after Gray was taken to the hospital and thereafter went to the scene of the tragedy on that same night and interviewed one Spiliotis in the drug store and one Williams at the gas station. It was a matter of argument to the court or jury as to whether or not a different man had come on duty in the meantime in each of those places of business.

"The second point made by the plaintiff is closely akin to the first one. She claims that the testimony of Hough raises no substantial conflict. If by this contention she means that the trier of the facts was bound to accept the story of her witnesses because there were more of them, the contention cannot be sustained. A bare reading of the record discloses that the story told by the witnesses for the plaintiff and the witnesses for the defendant are conflicting. Hough testified that Gray hit him behind the ear. Later when Hough took Gray to the hospital Hough was there treated for a wound behind the ear. The uncontradicted evidence is that Gray had been a patron of Hough, who was the driver of a taxi; that their relations had been friendly at all times, although their relations were not intimate. When Gray was taken to the hospital there was the fatal wound on the back of his head and there was a slight abrasion on the cheek which Hough testified came in contact with his fist. The entire story as told by Hough was to the effect that he was at all times attempting to avoid trouble with Gray. He tried to get Gray to stop quarreling with him. He tried to induce Gray to allow him to take him home. When Gray fell in the street Hough at once grabbed up his body, carried it to the sidewalk, tried to revive the unconscious body, caused a message to be sent for an ambulance, and when the ambulance arrived caused Gray's body to be put in the ambulance, and then himself stepped into the ambulance and went to the hospital along with Gray,

doing all that he could to administer to Gray in his unconscious condition. Under these circumstances we are quite unable to say that the testimony of Hough does not create a substantial conflict in the evidence.

"In her next point the plaintiff states her contention as follows: 'Even if it be true that John R. Gray at the hydrant or shortly before receiving the injury which caused his death, had made an unlawful assault upon Hough, or had engaged in a quarrel, fight, or altercation with Hough, nevertheless if it also be true that, before or at the time of suffering the bodily injury from which he died, he had abandoned or withdrawn from the quarrel, or was retreating to avoid further difficulty or trouble, or was not then assaulting Hough, then the bodily injury was sustained through accidental means within the meaning of the policy here sued on, and notwithstanding the previous acts of Gray his death did not result from any violation of law by him.' Assuming the proposition as stated to be sound, it appears at once that it is based on the assumption that episodes four and five occurred as testified to by the witnesses for the plaintiff. However, the trial court did not adopt the story as told by those witnesses. In findings No. 6, No. 7 and No. 12 the trial court found affirmatively that Gray met his death while assaulting Hough. In finding No. 11 the trial court inferentially found that Gray did not meet his death by being assaulted by Hough.

"In her fourth point the plaintiff states that if the insured's injury was intentionally inflicted by Hough, yet as to the insured it was accidental. Be this as it may, there was evidence that Hough did not intentionally inflict any injury on Gray, and the court made a finding to that effect.

"The last point made by the plaintiff is: 'If Hough's testimony is true, the cause of Gray's injury was accidental tripping or stumbling and plaintiff is entitled to recover.' Expanding that thought the plaintiff says: 'There are only two theories to account for the injury to Mr. Gray, namely: (1) That Gray and Hough separated at the hydrant, as testified to by every witness without exception, Hough starting up Taylor street and Mr. Gray starting across Taylor street, and that thereafter Hough returned and without warning struck Gray; or (2) that Gray while walking or stepping backwards tripped or stumbled and so

fell.' The first contention assumes that the fight was abandoned by Gray at the hydrant and also assumes that the testimony given by the plaintiff's witnesses was true and the testimony given by the defendant's witnesses was untrue. The record as hereinabove quoted does not justify the plaintiff in drawing any of these assumptions. Moreover, the trial court found the facts against the plaintiff. The second contention rests on the fact that Hough testified that Gray tripped and stumbled. Hough gave such testimony, but he also stated that it was his conclusion. The utmost that can be said is that he heard a 'click'. Of course that did not necessarily indicate a tripping and stumbling. If one steps on a railroad track necessarily there will be a 'click'. As to the second contention, the plaintiff cites the decision entitled *Lickleider* v. *Iowa State Tr. Assn.*, 184 Iowa, 423 [3 L. R. A. 1295, 166 N. W. 363, 364, 168 N. W. 884]. But that case, and others cited by the plaintiff, dealt solely with the clause 'external, violent, and accidental means'. They did not deal with the additional clause, 'if the death of the insured . . . resulted . . . from any violation of law by the deceased . . . ' Of course, in the case at bar, both clauses are involved.

"In further support of the findings of the trial court we may state that we find no substantial evidence justifying counsel or court in breaking the story into episodes. It could better be classified as one continuous running struggle between Hough and Gray from the time they left Marquard's until Gray fell in the street. The evidence is far from convincing that, at the hydrant or at any other time, Gray abandoned the affray and attempted to retire therefrom. Therefore the case presents a picture of one prolonged attempt on his part to assault, and of assaulting, Hough.

"We find no error in the record."

The judgment is affirmed.