MARY CLANCY, Plaintiff, *v.* JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Defendant.

City Court of New York, Bronx County, July 25, 1935.

*Gustave L. Lowenberg,* for the plaintiff.

*Dean Potter,* for the defendant.

DONNELLY, J. On August 2, 1929, defendant issued to George M. Clancy its $2,000 policy of life insurance. Upon Clancy's death, on July 29, 1934, it paid this sum to his wife, Mary Clancy, the named beneficiary. Attached to the policy is a supplementary provision for the payment of an additional $2,000 as an accidental death benefit, on conditions set forth. The present action is to recover the additional benefit.

The supplementary provision, so far as pertinent, is as follows: " If  *  *  *  due proof shall be presented at the Home Office of the Company, of the death of the Insured  *  *  *  caused solely by external, violent, and accidental means,  *  *  *  and that such death occurred within ninety days after such injury and as a direct result thereof, independently and exclusively of all other causes,  *  *  *  the company subject to the conditions herein set forth will pay an additional sum of Two Thousand Dollars." " This provision for benefit shall not apply if the death of the Insured results directly or indirectly  *  *  *  from homicide, or from any violation of law by the Insured."

At the time of his death, Clancy was thirty-four years of age.

In the early hours of the morning of July 19, 1934, in a night club in Long Island City, Clancy became involved in an argument with a stranger, a man about his own age. Both had been drinking rather heavily. During the course of the discussion Clancy invited the stranger " outside," when Clancy made a pass at the stranger, evidently intending to strike him, whereupon the latter pushed Clancy, who fell and struck his head. Clancy was removed to a hospital where he died a few hours later from a fractured skull.

Was Clancy's death an accidental one within the meaning of the policy?

Those cases in which the insured, armed with a dangerous weapon, deliberately engaged in an altercation with another, and was killed, present no difficulty. The death of the insured in such circumstances was not " accidental." It was the result naturally to be

expected of the voluntary act of the insured. (*Taliaferro* v. *Travelers' Protective Assn.*, 80 Fed. 368; *Occidental Life Ins. Co.* v. *Holcomb*, 10 F. [2d] 125.)

The same rule was applied where the insured was killed by a police officer attempting to effect the arrest of the insured, fleeing after the commission of a felony. (*Piotrowski* v. *Prudential Ins. Co.*, 141 Misc. 172.)

In *Gaines* v. *Fidelity & Casualty Co.* (111 App. Div. 386) the insured, who was apparently unarmed, was killed by another whom he had struck and threatened to kill. It was held that it was not an accidental death within the meaning of the policy. My attention has not been directed to, nor have I been able to find any case in this State, in which the same rule has been applied to an unarmed aggressor who engages in a dispute with another, who, as at bar, simply pushes him away apparently for the purpose of avoiding hostilities. In *Gray* v. *Western States Life Ins. Co.* (298 Pac. 512) the double insurance clause provided, in part, for payment of double face amount of policy on receipt of proof that insured's death occurred as result, directly and independently of all other causes, of bodily injury effected solely through external violence and accidental means, and also provided that such clause would not apply if insured's death resulted from any violation of law by insured. Gray sought one Hough, against whom he had an apparently fancied grievance. He and Gray were not strangers to each other. When Gray found Hough he assaulted him thrice. On each one of these occasions Hough endeavored to avoid Gray, so much so that Hough, without retaliating, went away when Gray struck him. On the last occasion, when Gray repeated the assault, Hough, in self-defense, hit back, Gray fell backwards, striking the back of his head on a street car track, causing a fracture from which he died. Neither was armed. Neither had been drinking. It was held that Gray's death was not accidental, within the meaning of the policy. As the court observed of Gray's conduct: "It presented a picture of one prolonged attempt on his part to assault, and of assaulting Hough."

In *Mutual Life Ins. Co. of New York* v. *Braude* (76 F. [2d] 273) the policy provided that double indemnity should not be payable "if such death result from any violation of law by insured." The insured died as the result of being struck by a train of the Pennsylvania Railroad Company at Elizabeth, N. J. A New Jersey statute provides: "Trespassing on tracks; contributory negligence; crossings. It shall not be lawful for any person other than those connected with or employed upon the railroad to walk along the tracks of any railroad except when the same shall be laid upon a public

highway; if any person shall be injured by an engine or car while walking, standing or playing on any railroad, or by jumping on or off a car while in motion, such person shall be deemed to have contributed to the injury sustained, and shall not recover therefor any damages from the company owning or operating said railroad; provided that this section shall not apply to the crossing of a railroad by any person at any lawful public or private crossing." (3 Comp. St. 1910, p. 4245, § 55.) In this case the violation of the statute by the insured defeated the right of his beneficiary named in the policy to recover thereunder. I should say that that is as far as this decision goes. I doubt its application to the instant case, for reasons which will be stated presently.

In *Fidelity Casualty Co.* v. *Stacey's Exrs.* (143 Fed. 271) it appeared that the insured became involved with another and struck the latter in the mouth with his fist, causing a slight abrasion of the skin of one of the fingers of the insured. The finger became infected, which resulted in blood poisoning and the death of the insured. It was held that the death of the insured was not accidental within the meaning of the policy, under the terms of which the plaintiff's testator, Stacey, was insured " against disability or death resulting directly and independently of all other causes, from bodily injuries sustained through external, violent and accidental means." In this case the court's opinion appears to be based upon the fact that the injury to the insured was the result of his voluntary act when he was in full possession of his mental faculties.

My attention has not been directed to, nor have I been able to find, any authority in this State in which the consequences of a voluntary act have been pushed so far in defeating the right to recovery upon a policy providing for double indemnity. The court's point of view, in fixing the meaning of the word " accident " in the contract at bar, must be that of the average man. " Such a man would say that the dire result, so tragically out of proportion to its trivial cause, was something unforeseen, unexpected, extraordinary, an unlooked-for mishap, and so an accident. This test — the one that is applied in the common speech of men — is also the test that is to be applied by courts." (*Lewis* v. *Ocean Accident & Guarantee Corp.*, 224 N. Y. 18, 21.) The language just quoted seems to me to be applicable to the situation presented by the manner of Clancy's death. The average man would probably consider him the aggressor in his quarrel with the stranger. But it is not consistent with the experience of the average man that the one who enters into a brawl with his bare hands, does so with the expectation that it may result fatally, if he has no reason to believe his antagonist is armed. At bar, " the dire result, so tragically

out of proportion to its trivial cause," was something entirely unforeseen. This appears to be the view entertained in *Lovelace v. Trav. Prot. Assn.* (126 Mo. 104; 28 S. W. 877). It was there held that although the insured if not the aggressor might have avoided the altercation which resulted in his death, nevertheless had no good reason to believe it would terminate fatally. On the night of the unfortunate incident, Lovelace became a guest at a hotel, the proprietor of which was his friend. Brown, the proprietor, was then absent. One Graves was in the lobby of the hotel very much under the influence of liquor, and loudly using profane and indecent language. Lovelace admonished him, whereupon a wordy dispute ensued, in which Lovelace applied to Graves an opprobrious epithet. When it appeared that he was about to strike Graves, preparatory to ejecting him from the hotel, he and Graves were separated by a bystander. Lovelace then started for his room, changed his mind, and returned to the scene. He then slapped Graves, whereupon Graves drew a pistol and shot Lovelace, mortally wounding him. So far as the opinion discloses, Lovelace was unaware that Graves was armed. The court said (at pp. 879, 880): "The learned counsel for the defendant concedes the force of the argument deduced from the ordinary meanings of the word [accident], but insists that they cannot apply where the insured has voluntarily assumed the risk which proved to be fatal,— in this instance, by entering into the altercation which led to his death. But there is one weak point in that contention. There is no proof whatever that the insured had any cause or reasonable ground to anticipate that he would be shot or killed when he undertook to eject Graves from the hotel. There is no proof that Graves exhibited a weapon, or made any remarks indicating a purpose to shoot, before the affray. The mere fact that Lovelace engaged in or brought on a fight in the manner described, did not, of itself, indicate that he sought death, or had reason to expect it as a consequence of his action. * * * Whether he [Lovelace] acted lawfully as a guest of the hotel, during the absence and illness of the proprietor, in attempting to remove Graves from the hotel office by force, we think it needless to investigate. It may be assumed that by his course of conduct he voluntarily assumed the risks of a fight; but there is nothing in the circumstances to show that he voluntarily assumed the risk of death. We consider his killing an 'accident' in the popular and ordinary sense in which that word is generally used." In this case the wording of the policy was: "$4,000 shall be paid in case of death by accident," and "shall be entitled, in case of his death from natural causes, to $100."

At bar the policy excepts death directly or indirectly from homicide, or from any violation of law by the insured. In *Murray* v. *New York Life Ins. Co.* (96 N. Y. 614) the policies upon the life of Wisner Murray each contained a condition that if the insured " shall die in, or in consequence of a duel, or of violation of the laws of any nation, State or province," the policy shall be void. The court said (at p. 618): " If the violation of law in which the deceased was engaged was trivial, although calculated to some extent to excite opposition or resistance, but the taking of life was a result which no reasonable man could have contemplated as likely to follow from the unlawful act, there would be no such relation between the act and the death that the former could be said to be the cause of the latter. But if, on the other hand, the party killed was engaged in committing a violent assault, the natural result of which would be to arouse the passions and excite the anger of the party assailed, and in the heat of passion he killed his assailant, the death would, we think, be the result of the unlawful act within the meaning of the policy, although the party causing it exceeded the bounds of lawful resistance."

At bar, Clancy was engaged in no violent assault upon Derwechter, nor did Derwechter in the heat of passion kill Clancy. There was nothing in the meeting between the two to justify a finding that Clancy took the risk of Derwechter's resistance to any extremity. All of the surrounding circumstances show it to be an incident trivial in itself except for the wholly unexpected tragical result which neither contemplated. The case is distinguishable from those in which, although the insured was unarmed, the circumstances were such that he should have known that the manner of his entrance into the quarrel was liable to force the one he assailed to extreme measures.

Verdict directed for plaintiff in the sum of $2,000, with interest from the 29th day of July, 1934.

Ten days' stay and thirty days to make and serve case.