JOHNSON, P. J.
—This is an action brought upon a policy issued by the defendant upon the life of Terrence J. Sweeney in the sum of $1,000 payable to the insured’s mother, May Sweeney, and embodying a supplementary contract for payment of double indemnity in the event of death by external, violent and accidental means, subject, however, to the proviso, among others, that “death shall not have resulted from bodily injuries . . . sustained while or as a result of participating in or attempting to commit an assault or felony’’.
Upon the death of the insured, which occurred as the result of injuries sustained in an affray in which he was a participant, the defendant paid to the plaintiff as the beneficiary of the policy the sum of $1,000, the face amount of the policy, but refused to pay the additional sum of $1,000, claimed under the supplementary contract. The refusal was based on the contention that under the circumstances attending the insured’s death, the proviso mentioned barred all right to the double indemnity.
*Supp. 769 The action was instituted for recovery of the sum of $1,000 under the supplementary contract. The case was tried with a jury; and upon conclusion of the evidence the defendant moved for a directed verdict in its favor. That motion was denied; and upon submission of the case to the jury, a verdict was rendered in favor of plaintiff for $1,000. Thereupon the defendant made, in alternative form, a motion for judgment in its favor notwithstanding the verdict. That motion having been denied, and judgment having been entered on the verdict, the defendant prosecuted this appeal.
It is conceded that the death of the insured resulted from injuries sustained while a participant in a hostile encounter. The real point of the controversy centers upon the question whether, without substantial conflict, the evidence shows that the insured started the affray or was to some extent at least a voluntary participant therein.
It becomes necessary therefore to give attention to the salient features of the testimony. On Saturday night, June 24, 1933, the insured, Terrence J. Sweeney, had attended a dance at Guerneville with his friend, Jack McCoy. While there, they had, as McCoy said, “a few beers”; and as they left the dance hall shortly before 1 o’clock Sunday morning and walked along the main street, Sweeney became embroiled in the encounter which led to his death. McCoy was unable to remember what occurred as he and Sweeney walked along or to tell anything about the circumstances leading to Sweeney’s death. The story of the affray was told by seven young men who were engaged in conversation together as Sweeney and McCoy passed; and with two of whom separately, the brothers John and William Mulkeen, Sweeney came into conflict. Those seven young men, though present at the trial under subpoenas issued at the instance of defendant, were called to the stand as witnesses by the plaintiff; and when, after those witnesses had been examined at length, the plaintiff rested, the court had before it all the evidence in the case.
There were, as one would expect, some variances in minor details in the testimony of those young men; but from consideration of the evidence as a whole, we cannot escape the conclusion that it proves convincingly and without substantial conflict that Sweeney was himself the aggressor, and picked a fight without any provocation.
Four of the young men, including William Mulkeen, had been camping near Guerneville for a time. They were in an *Supp. 770 automobile stationed at the curb near the dance hall. John Mulkeen and others of the party had come from San Francisco for the week-end. They had been at the dance with their friends; but as they were not staying at the camp, they stood on the sidewalk while thej' discussed with those in the automobile arrangements for a swim next day.
Without dispute in the testimony it appears that Sweeney and McCoy passed the group so engaged in conversation, and then turned and came back to the place where John Mulkeen, standing on the sidewalk, was talking with his brother William sitting in the car. Sweeney, on approaching those standing, asked which one of them had said something. On being informed that none of the group had said anything, he then accosted John Mulkeen, asking if the latter had said anything. On receiving an answer in the negative, Sweeney, without warning, hit John in the face. The two men wrestled together and fell from the curb to the roadway. Mulkeen disentangled himself and moved off, holding his bleeding nose. Sweeney followed, shouting to Mulkeen, “Come back and I will give you some more.” As Sweeney was chasing John Mulkeen around the automobile, the latter’s brother, William, got out. He told Sweeney that they did not want to fight with him and to let John alone. One of the party, Monahan, tried to stop Sweeney, whereupon Sweeney swung at him, and then turned his attention to William Mulkeen, challenging him to fight. William tried to back away, but was hit by Sweeney; and in seeking to defend himself, William Mulkeen gave Sweeney a blow which caused him to fall backward and strike his head on the pavement, thereby sustaining injury resulting in his subsequent death.
Sweeney was six feet four inches tall and weighed about one hundred and sixty pounds. John Mulkeen was of about the same weight, and six feet one inch in height; but William Mulkeen’s height was only five feet six inches and his weight one hundred forty-five pounds.
Such is a composite recital of the evidence, given without substantial conflict by those who witnessed the occurrence. (Joseph Chiesa, Tr. pp. 14-18, 22, 24; William Mulkeen, pp. 27-31, 34-36; Frank Monahan, pp. 40, 41; Frank Bertolucci, 47-50; John Mulkeen, 52-55; Angelo Chiesa, 59-61; Amonante Celoni, 67, 68.)
Sweeney’s attack upon John Mulkeen and his encounter with William were so closely connected as to constitute parts *Supp. 771 of a single transaction. Not only was his aggressive intent manifested at the start by his words, but his actions evidenced still more loudly his determination to work bodily harm. He was not merely a participant in the assault. He was the instigator. The hostilities were wantonly provoked bjr himself, and were of such serious nature that he might reasonably have expected that indignation would be aroused and that injury might result.
The case in essentials is almost a fellow to Gray v. Western States Life Ins. Co., 214 Cal. 695 [8 Pac. (2d) 126], in which double indemnity was denied under a policy excluding such recovery in case death should result from “any violation of law” by the insured. In that case the insured John E. Gray made a wilful assault upon a friend, who in self-defense and to protect himself struck Gray, causing him to fall and suffer injuries resulting in death.
The respondent cites in opposition Gilman v. New York Life Ins. Co., 190 Ark. 379 [79 S. W. (2d) 78], which dealt with a policy similar to that before us. The insured’s death was the result of a pistol shot fired by another. It was there held that the defendant had not sustained the burden of proving justification for the killing as against the presumption of accidental death. The court declared, however, that if the insured is killed by another in his necessary self-defense, then the insurer has a complete defense in an action on the policy for accidental death. Considerable is said in respondent’s brief about a presumption of innocence on Sweeney’s part and an inference in favor of accidental death, which put the burden on the defendant to prove facts overcoming or offsetting such inference.
The plaintiff might perhaps have limited herself to producing merely sufficient evidence to make a prima facie case of accidental death, and then have given way to the defendant to present the witnesses it had subpoenaed. But plaintiff followed the course of appropriating defendant’s witnesses; and when their examination had been concluded, all the facts and circumstances were before the court.
The witnesses to the assault were not contradicted or impeached in respect of any issuable fact, and neither the jury nor the court had the privilege of arbitrarily disregarding the positive evidence of actual occurrences. (Hayward v. Rogers, 62 Cal. 348, 372; Hutchison v. Holland, 47 Cal. App. *Supp. 772 710, 712 [190 Pac. 1072] ; Hynes v. White, 47 Cal. App. 549, 552 [190 Pac. 836].)
The facts having been proved by the uncontradicted and unimpeached testimony of witnesses called by plaintiff, under circumstances affording no indication that the testimony was the product of mistake, inadvertence or untruthfulness, the evidence adduced was so wholly irreconcilable with the presumption and the inference sought to be invoked as to cause them to be dispelled and disappear from the case. (Mar Shee v. Maryland Assur. Corp., 190 Cal. 1 [210 Pac. 269].)
An inference is a deduction which the reason of the jury makes from the facts proved. (Sec. 1958, Code Civ. Proc.) It is not a mere conjecture or an arbitrary dixit without reason and without factual support.
As is said in the recent case of Reese v. Smith, 9 Cal. (2d) 324 [70 Pac. (2d) 933] : “Neither a verdict nor a judgment can be based on guesses or conjectures. (Puckhaber v. Southern Pacific Co., 132 Cal. 363 [64 Pac. 480].) And also ‘A finding of fact must be an inference drawn from evidence rather than on a mere speculation as to probabilities without evidence. A majority of chances never can suffice alone to establish a proposition of fact, since the slightest real evidence would outweigh all contrary probabilities. ’ (23 Cor. Jur., sec. 1750, p. 18.) ”
We conclude that defendant’s motion for judgment in its favor notwithstanding the verdict should have been granted. Accordingly the judgment for plaintiff must be reversed with directions to the municipal court to enter judgment for defendant for its costs of suit. Defendant will be entitled also to its costs on appeal.
Conlan, J., and Robinson J., pro tem., concurred.