## HOME BENEFICIAL LIFE INSURANCE COMPANY, INC. *v.* PARTAIN

[No. 145, October Term, 1953.]

*Decided June 24, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*John O. Herrmann* and *Jacob S. New* for the appellant.

*Philander B. Briscoe,* with whom were *Briscoe & Jones* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal from a judgment rendered upon the verdict of a jury in favor of the plaintiff (appellee) as beneficiary under a policy of accident insurance issued to her husband, Ernest E. Partain, the insured, by the defendant (appellant) insurance company (referred to below as the "Company"). The pertinent provisions of the policy are that:

"[The Company] insures the person designated as the Insured * * * and subject to all provisions of this Policy, WILL PAY to the Beneficiary * * * the principal sum [$1,000] * * * upon receipt of due proof of the death of the Insured * * * as a result of * * * bodily injury effected solely by violent, external and accidental means * * *.

3. EXCLUSIONS. This policy does not cover loss of life, or limb, or eyesight, which results * * * from any violation of law by the Insured or violence intentionally inflicted, by another person * * *."

There was another policy involved in the case issued by the same insurance company upon the life of the same insured and payable to the same beneficiary. This was a policy of life insurance in the principal sum of $500, with a "double indemnity" provision in case of accidental death. The Company conceded liability for the principal sum, but denied liability under the double indemnity provision. The court directed a verdict in its favor on that claim, and the beneficiary did not appeal. There are differences between the language in the exclusion clause of the accident policy and that in the corresponding clause of the accidental death benefit in the life insurance policy. For ready comparison and reference, the pertinent provisions are set forth here:

"ACCIDENTAL DEATH BENEFIT. If the Insured, * * *, sustains bodily injury, solely through external, violent and accidental means, resulting directly and independently of all other causes, in the death of the Insured * * * the Company * * * will pay * * * an Accidental Death Benefit equal to the amount of insurance which would otherwise be payable under this Policy, PROVIDED, however, that no additional benefit shall be payable if the death of the Insured * * * is caused or contributed to, directly or indirectly, or wholly or partially by

\* \* \* any violation of law by the Insured or violence intentionally inflicted by another person \* \* \*."

The insured met his death as a result of an altercation and scuffle with one Brashear, which occurred in October, 1952. Most of the testimony as to what occurred comes from Brashear. The insured, Partain, who lived in one part of Baltimore, went to another part of the city to collect a debt which he claimed was due him from Brashear. Partain found Brashear in a tavern near the latter's home. Brashear was drinking beer at the rear of the bar when Partain approached him and demanded payment of the debt and cursed him loudly. Brashear denied owing the debt and sought to avoid trouble by leaving the tavern through a side or rear door, which led to an alley behind the tavern. Brashear's house was on the other side of the alley. Partain followed Brashear into the alley, with a glass of beer in his hand. Partain set the beer down and grabbed Brashear by the collar and a scuffle ensued. Brashear broke away from Partain and tried to get to the gate opening into the yard at the back of his home. Partain and Brashear grappled again in the alley, and Brashear pushed him away. Partain went backward, fell and hit his head on a stone at the corner of a building on the opposite side of the alley. A few hours later he died from the injury sustained when his head hit this stone.

The only other witness to testify about the scuffle in the alley was one Bode, who said that there was some water in a gutter in the middle of the alley, that the men were scuffling there and that he thought Partain slipped in the water in the gutter.

Partain was larger than Brashear and outweighed him by about thirty pounds. Though Partain had been swinging his arms in an apparent effort to hit Brashear, the testimony indicates that no blows actually hit Brashear. It also indicates that Breashear scuffled with Partain and pushed him away, but that he did not strike him.

The trial court instructed the jury that the conduct of Partain in going after Brashear and laying his hands on him and attempting to hit him was a violation of the law, that this conduct on Partain's part was the direct cause of the fight and the indirect cause of his death, and that the plaintiff could not recover the double indemnity under the life policy.

With regard to the accident policy, the trial court in giving his charge called attention to the difference in language between the life and accident policies, and stated that neither a violation of the law by Partain nor any violation of law involved in the push was the immediate cause, or the direct, proximate cause, of Partain's death, and that the proximate cause of his death was the contact of his head with the stone. The court instructed the jury "that if you determine that the death of Mr. Partain was caused immediately by his striking his head on the stone as the result of the push and the fall, and that the blow on the head was not intended by Mr. Brashear your verdict should be for the plaintiff under the accident policy."

There was no testimony to show such an intention on Brashear's part. The trial court also instructed the jury that whether or not the insured slipped in the water (as testified by Bode) made no difference. The verdict was in favor of the plaintiff and the defendant's motion for judgment *n.o.v.* was denied.

The appellant raises three questions: (1) Did the death of the insured result from bodily injury effected solely by accidental means; (2) Did it result from any violation of the law by the insured; and (3) Did it result from violence intentionally inflicted by another person?

These questions, though stated separately, are so closely related that they tend to overlap.

In this case there is no room for doubt that the death of the insured was not expected by either participant in the scuffle; and consequently the death itself was accidental. *John Hancock Mutual Life Ins. Co. v. Plummer,*

181 Md. 140, 28 A. 2d 856. But here, as in that case, the insurance was not against accidental death, but against death by accidental means; and, as was said in the *Plummer* case, "the distinction between accidental external means and accidental result has been generally recognized and applied." This Court cited *Landress v. Phoenix Mutual Life Insurance Co.*, 291 U. S. 491, 54 S. Ct. 461, 78 L. Ed. 934, and said: "We adopt the majority view that a means is not made accidental, within the terms of a policy providing for double indemnity in case of death resulting from bodily injury caused solely by external, violent and accidental means, merely because death results unexpectedly, where the means consists of a voluntary and intentional act occurring in the usual manner."

Here, the insured was the aggressor and the person attacked apparently sought to get out of the fight or scuffle with a minimum of bodily harm to either participant.

There are a number of cases in other jurisdictions which are closer to this case on their facts than the *Plummer* case and the *Landress* case, above cited, and which apply the distinction between accidental result and accidental means. Among them are: *Borneman v. John Hancock Mutual Life Ins. Co.*, 289 N. Y. 295, 45 N. E. 2d 452 (turning primarily on intentional violence) ; *Gray v. Western States Life Insurance Co.*, 214 Cal. 695, 8 P. 2d 126; *Harrison v. Prudential Ins. Co. of America*, 54 Ohio App. 279, 6 N. E. 2d 991; *McNamara v. Metropolitan Life Ins. Co.*, 133 N. J. L. 48, 42 A. 2d 464, aff'd. 134 N. J. L. 231, 46 A. 2d 798 (limited and partially distinguished in *Shields v. Prudential Ins. Co.*, 6 N. J. 517, 79 A. 2d 297, 26 A. L. R. 2d 392; *Fidelity & Casualty Co. of N. Y. v. Stacey's Ex'rs*, 143 Fed. 271 (C. C. A., 4th, S. C.). For a comprehensive collection of cases dealing with the whole subject, see the Annotation in 26 A. L. R. 2d 399, and particularly pages 427-431 for cases of the general type here involved.

The rule which we deem applicable and in accord with the *Plummer* case is well expressed in the *Harrison* case above cited as follows: "Counsel for appellant contends that while the insured decedent might have anticipated physical injury, he would not have anticipated death; that death was not the natural and probable result of such an encounter, but was an accidental incident to the encounter. Here is a case where a man deliberately provoked or willingly assented to a fight and the fight was started in the way both parties had anticipated and planned. We cannot concur in the contention that death was not a probable result of such an encounter. Ordinarily, of course it would not ensue, but whether or not it would ensue would depend upon many factors, for example, the relative strength and physical vigor of the two parties, the nature and character of the blows that might be struck, and the capacity for physical resistance that would exist in either combatant. While ordinarily the result would be physical injury to one or the other and not death, yet death is always a possibility which ought to be foreseen and when it ensues, it is not, in our judgment, to be treated as accidental."

The trial court's instructions on the accident policy do not accord with the above rule. In practical effect, they hold the means accidental because the result was unexpected and unintended.

There are a number of cases in other states which reach the result embodied in the trial court's instructions. Generally speaking, even decisions which would support a holding in such a case as this that death was caused by accidental means, as well as cases reaching the opposite result, recognize the distinction between accidental means and accidental result, but determine the character of the means as accidental or otherwise on the basis of the foreseeability of the result. On the question of what is foreseeable there is a considerable divergence of opinion.

The question as to whether or not the death of the insured was caused by his violation of law is also closely

bound up with the question of foreseeability. Two cases, *O'Neil v. New York Life Ins. Co.*, 65 Idaho 722, 152 P. 2d 707, and *Clancy v. John Hancock Mutual Life Ins. Co.*, 156 N. Y. Misc. 732, 282 N. Y. Supp. 510, have stressed the thought that the dire result (death) was tragically out of proportion to its trivial cause, and on that basis have found the means accidental. We find this reasoning difficult, if not impossible, to reconcile with the distinction between an accidental result and accidental means and think that to follow it would overturn the *Plummer* case.

In some cases foreseeability appears to turn upon whether or not an aggressor who is larger, stronger or better armed than the person whom he attacks should expect the victim of his assault to resist at all, and if so, to what degree. See, for example, *Shields v. Prudential Insurance Co.*, *supra*. We think it unnecessary to engage in such speculations in the present case.

Even if the degree of resistance to be anticipated should be considered relevant, that employed by Brashear was a minimum for his own protection. That it produced death emphasizes the unexpected character of the result, but certainly not of the means employed. The fact that he pushed the decedent and did not strike him a blow with the fist seems quite immaterial in this case.

It seems pertinent to consider the area of risk which Partain entered when he assaulted Brashear in the alley. That he did not strike Brashear seems of little consequence, since he was swinging his arms in an effort to do so. That Brashear did not punch Partain seems wholly immaterial. When Partain attacked Brashear, he must have realized that Brashear would react either by standing and fighting or by trying to get away, or by a combination of both. For purposes of escape from a man who had grabbed him by the collar, Brashear's reaction of pushing Partain away was perfectly natural and foreseeable. Unless one wishes to curtail his vision by drawing a curtain because of the unexpectedly dire

result flowing from a relatively trivial cause, it is obvious that a sharp or violent push may result in a fall and that if there is some object about, such as the stone in this case, upon or against which the attacker is pushed or falls as a result of the push, he may sustain serious or fatal injuries, little as he may expect it or rare as such a result may be in brawls of this sort. We are unable to adopt the view of the learned trial judge that the assault was only an indirect cause of the death. A bowler who rolls a ball so as to knock down one ten-pin and to cause it in falling to strike another knocks down the second ten-pin just as much as he knocks down the first; and his act is the direct and proximate cause of both of them falling. So here, in our estimation, the assault set off such a train of consequences that it was a direct and proximate cause of Partain's death. The assault led directly to the push, and the push (leaving aside for the moment the possibility that Partain's slip was not due to the assault) led directly to the injury which resulted in Partain's death. On this state of facts Partain's fatal injury was not due solely to accidental means. On the contrary it was caused by Partain's assault upon Brashear and Brashear's natural reaction to it. Also, since the assault constituted a violation of law and proximately caused the insured's death the defendant was relieved from liability under the clause of the accident policy which excludes from coverage "loss of life * * * which results * * * from any violation of law by the Insured." The difference in language between the life policy and the accident policy accordingly does not produce a different result.

On the question of violence intentionally inflicted by another person, it seems clear that Brashear intentionally pushed Partain away for the purpose of making good his own escape from the attack. In *Borneman v. John Hancock Mutual Life Ins. Co.*, 289 N. Y. 295, 45 N. E. 2d 452, the double indemnity provision in the policy excluded liability for death resulting from injuries intentionally inflicted. The insured got into a quarrel

with another man and made a movement as if to hit him. The other thereupon struck the insured several blows, which knocked him over backwards. The insured's head hit the pavement or hit a step and he sustained a fracture of the skull from which he died. The court said: "That Brown intended to punish the insured by inflicting injuries upon him is not open to doubt. But that Brown intended to kill the insured does not appear. Since the death of the insured under the circumstances of the evidence in this case cannot be said to be unforeseen, undisputed or extraordinary, the evidence presented a question of fact, whether the blows struck by Brown were not a contributing proximate cause of the death of the insured. The connection between the intentional injuries and the dire result cannot be said as a matter of law to be too remote. * * *"

See also *Ryan v. Continental Casualty Co.*, 94 Neb. 35, 142 N. W. 288; *Strother v. Business Men's Accident Ass'n.*, 193 Mo. App. 718, 188 S. W. 314; and *Fidelity & Casualty Co. v. Smith,* 31 Tex. Civ. App. 111, 71 S. W. 391. In the last mentioned case the policy excluded benefits for injuries intentionally inflicted upon the insured. The insured attacked one Best who then struck the insured in self-defense thereby injuring him. The Court said: "* * * Best struck the plaintiff for the purpose of protecting himself, and, while he may not have intended to inflict all the injury that was inflicted, his striking the plaintiff was by design, and not accidental."

As was said in *Newell v. John Hancock Life Ins. Co.,* 94 N. H. 26, 45 A. 2d 579, "* * * it would be inconsistent for us to say that a voluntary act may not be casual, even though the result was not intended or anticipated. It may be."

See also, on the subject of intentional injuries, *United Life & Accident Ins. Co. v. Prostic,* 169 Md. 535, 182 A. 421.

There was some testimony to the effect that the decedent slipped in some water in a gutter in the middle

of the alley. It appears probable from the testimony (including that of the witness Bode who mentioned the slipping) that if there was any slipping in the water, it was a direct consequence of the push, or that it occurred during the struggle; and in either of those events the views we have already expressed would remain applicable. However, it is not absolutely clear on the basis of Bode's testimony that it might not have occurred independently of the scuffle and so might have been accidental. Cf. *Levinson v. Reliance Ins. Co.,* 184 Md. 453, 41 A. 2d 485. The case went to the jury under instructions which did not segregate this possibility as a ground upon which the plaintiff might recover, but treated it as making no difference in view of the other instructions pertaining to the accident policy. Since we hold those other instructions to have been erroneous, the judgment must be reversed; but since there is a possible ground of recovery based upon an accidental fall not due to the assault, the case will be remanded for a new trial.

*Judgment reversed with costs and case remanded for a new trial.*