HOME MUTUAL BUILDING & LOAN ASSOCIATION, Respondent, vs. NORTHWESTERN NATIONAL INSURANCE COMPANY, Appellant.

*December 3, 1940—January 7, 1941.*

476

For the appellant there was a brief by *Wolfe & Hart* of Milwaukee, and oral argument by *H. O. Wolfe*.

For the respondent there was a brief by *Ludwig & Ludwig* of Milwaukee, and oral argument by *Carl J. Ludwig*.

FRITZ, J. For the purposes of passing upon defendant's contentions, it suffices to note the following facts, which were found by the court upon evidence which was in part undisputed and which, in so far as it was in dispute, can reasonably be considered to warrant the court's findings to the following effect. The dwelling and attached garage building, on which the fire insurance policies in question were issued by defendant to plaintiff, were rented by the owner to Walter T. Lentz, alias, for residence purposes, about twenty-two days before the fire on February 27, 1937. He and a woman represented to be his wife entered into occupancy of the premises about

February 5, 1937, and they, together with a girl about five years of age, occupied the premises continuously until February 27, 1937. They had on the first floor at least four kitchen chairs and kitchen table, an upholstered chair, a davenport or couch, a floor lamp, a quantity of dishes and kitchen utensils and some clothing; and on the second floor two beds or bedsprings. About 1:45 o'clock a. m. on February 27, 1937, a fire of undetermined origin broke out on the second floor of the premises, and largely destroyed that floor and the roof. By the time some of the nearest neighbors, who resided several blocks from the premises, which were at the outskirts of a village, and also two village police officers arrived at the premises, the occupants had escaped and disappeared. After the fire there were found in the building, in addition to the above-mentioned furniture and furnishings, a safety razor and some shaving cream, bread, milk, and sausage; and it was also discovered that a large still equipment had been installed and used in the building, including a tin and sheet-copper column eighteen inches in diameter and twenty feet high, extending from the basement to the top of the second floor, another column twelve feet long, extending into a second-floor bathroom, and a six by six-feet pressure boiler in the basement. The court found further that by one or more explosions the first and second-floor windows and window sash and a portion of the brick chimney beyond the top of the first floor and one of the gables on the northeast corner of the house were blown out; that a major explosion occurred after a hostile fire had started and was burning in the premises; that during the course of the fire an explosion occurred within the twenty-feet-high column and blew off the cover thereof, together with a connection between it and the condenser, but that this explosion or expansion of gases within the still column was not the cause of damage in the amount of $925.26, which was stipulated to have been the result of an explosion, in addition to damage amounting to $6,400, which was at-

tributable to fire alone; and that prior to the fire the plaintiff did not know, or have reason to know or suspect, that the tenants intended to or had installed a still, and did not have any control of those acts. The court also found that each of the three standard fire insurance policies, insuring plaintiff against "all direct loss and damage by fire" except as provided in said policy, was issued by defendent to plaintiff with an attached standard policy form of rider pasted on to that portion of each policy containing a blank space with the words "(Space for description of property);" and that on this rider there was the following printed language with certain typewritten insertions (which are printed in italics in this opinion to distinguish them from the portions which appeared in print), to wit:

"On the following described property, all situated *Cor. Summit & Pelham Parkway, Lot 7 Block 16 Continuation of Bayside* Town of *Milwaukee* State of Wisconsin. On the *two* story *shingle* roof *brick veneered* building, including foundations, plumbing, electric wiring, . . . also all permanent fixtures belonging to and constituting a part of said building; occupied and to be occupied only for dwelling purposes;"—

and that on the second page of each of the policies are printed the "Stipulations and Conditions of Policy," with the numbered lines of the "Standard Fire Insurance Policy of the State of Wisconsin" in the words and manner as set forth in sec. 203.01, Stats., and that among the same are the following, to wit:

"Unless otherwise provided by agreement in writing added hereto this company shall not be liable for loss or damage occurring

*"Increase of Hazard*   (a) while the hazard is increased by any means within the control or knowledge of the insured; . . .

*"Explosion*   (f) by explosion, unless fire ensue, and, in that event, for loss or damage by fire only."

The court further found that in the policies there are used in a number of places the words "while" or "only while" to state conditions which would result in the suspension of liability on the part of the insurer, and also state situations which will result in forfeiture of the policies by means of expressions such as "this company shall not be liable if (unless) . . . ;" "this policy is void if (unless) . . . ;" "it is a condition of this insurance that . . . ;" and "all insurance shall cease if. . . ."

Upon the facts found the court concluded, in so far as material on this appeal, that when defendant issued the policies it regarded any future occupancy of the insured premises for purposes other than dwelling purposes as increasing the hazard, but that such resulting increase of hazard was not intended to, and did not, work a forfeiture of the coverage nor suspend such coverage; that the words in the policies which refer to the premises as "occupied and to be occupied only for dwelling purposes," and which defendant inserted in typewriting in the rider attached to each policy at the place designated therein as "(Space for description of property)," operate merely as describing the use of the premises at the time of the issuance of the policy and the intended future use thereof, and do not fix or limit the extent of the application of the insurance unless they are construed to refer merely to increase of hazard, and are by such construction reconciled with the "increase of hazard" clause and the provision insuring plaintiff "against all direct loss and damage by fire;" that the increase of hazard resulting from the installation of the alcohol still was not within the control or knowledge of plaintiff; and that neither such increase in hazard, nor the use or conversion of the building to purposes other than dwelling purposes only, operated to release the defendant, as insurer, from liability for the loss and damage in question. The court further concluded that since the major explosion did not precede the fire, defendant is not entitled to any deduction for explosion damage, but is liable for plaintiff's total loss and

damage of $7,335.26 occasioned, not only by the fire, but also by the explosion which was an explosion following a "hostile" fire and within the contemplation of the policies.

Defendant contends (1) that under the contract between the parties "the policies limit coverage to the time and during the period when the insured building is 'occupied and to be occupied only for dwelling purposes,'" and that this "language as thus used is not descriptive merely;" (2) that "the policy provisions defining and limiting the scope of the insurance and the coverage afforded are not inconsistent with or prohibited by the statutes, nor . . . in conflict with any of the conditions and provisions of the statutory fire insurance policy;" (3) and that "the admitted usage of the premises for illicit distillery purposes did not necessarily void the policies, but did suspend the coverage thereunder during the period of such usage."

None of these contentions can be sustained. The phrase "occupied and to be occupied only for dwelling purposes" at the end of the last sentence in the description of the insured property, which is in the rider attached to each policy at the blank space therein designated as "(Space for description of property)," constitutes and operates only as additional descriptive matter in connection with and but supplemental to the preceding descriptive words and phrases stating the location of all and the nature of some parts of the property insured. No term or provision is used in connection with any of that descriptive matter by reason of which any portion thereof, including the words "occupied and to be occupied only for dwelling purposes," can be held to operate as a limitation on the coverage afforded by the policy, or to constitute a condition subsequent or promissory warranty in respect to the use to which the insured intends to put the premises. It is not questioned by the defendant that the words "occupied . . . only for dwelling purposes," which are in the phrase under consideration, are merely descriptive of the property insured.

As that clearly is the purpose served by those words as to past or present use, the four additional words "and to be occupied," which are part of the adjective phrase stating the intended continuing future use, would seem likewise intended to be but descriptive of the premises. At all events, the phrase certainly fails to definitely express an intention to condition the insurer's liability upon continued occupancy of the premises as a dwelling; and there is no other provision anywhere in the policy which can be deemed to remove or remedy the uncertainty and ambiguity under the phrase in question if it was intended thereby to so condition or limit the coverage. The complete absence of any definite provision expressly conditioning or limiting the insurer's liability upon the continuing occupancy of the building as a dwelling is of considerable significance in view of the fact that in every other instance in which the insurer is to be absolved or relieved from liability, such intention is clearly expressed in words which are unambiguous by the use in the policy of such phrases as "this company shall not be liable if [or 'unless'] . . . ;" "it is a condition of this insurance that . . . ;" and "all insurance shall cease if. . . ." As it would have been but a simple matter for the defendant to have used some such clear and definite expression in the policy if it was its intention to provide for nonliability in the event the premises ceased to be occupied only for dwelling purposes, the failure to so provide warrants the conclusion that no such termination or suspension of liability was intended, and that phrase in question was inserted to serve as but descriptive matter. Moreover, if the phrase were to be given the construction and effect which defendant contends should be given thereto, the provisions would be in violation of the terms of sec. 203.01,. Stats., prescribing the use of the "Standard Fire Insurance Policy," and of sec. 203.06, Stats., providing that "no other or different provisions, agreements, conditions or clauses shall be a part of said policy, or be indorsed thereon

or delivered therewith, except" provisions in relation to certain matters which are mentioned in the statutes, but are not material in this case. Inasmuch as sec. 203.06, Stats., rigidly prohibits the insertion in a policy of any provisions limiting liability otherwise than by the provisions contained in sec. 203.01, Stats., and such as relate to the matters as to which provisions are expressly permitted by the exception in sec. 203.06, Stats., the defendant cannot lawfully insert in the blank space, which is designated in the "Standard Fire Insurance Policy" prescribed by sec. 203.01, Stats., as "(Space for description of property)," a provision limiting liability as it contends was intended by the adjective phrase in question. The only matter that can lawfully be inserted in this space is matter which is purely descriptive, *i. e.,* data to identify the property. Consequently, in view of the rule that as between two possible constructions of an ambiguous provision in a contract, one of which would render it invalid, there should be adopted the construction that will sustain the contract, it follows likewise that the words "occupied and to be occupied only for dwelling purposes" should be considered purely descriptive, and not as an additional limitation on the coverage under the policy.

There are conflicts in decisions in other jurisdictions construing somewhat similarly worded phrases. The decisions in *Ragley v. Northwestern Nat. Ins. Co.* 151 Wash. 545, 276 Pac. 537, and *Fayle v. Camden Fire Ins. Asso.* 85 Mont. 248, 278 Pac. 509, are in accord with the conclusions stated above. On the other hand, the conclusion that such phrases operate as limitations on the coverage does not seem to have been reached where the wording of the phrase was identical with the wording involved in this action, or of substantially the same import as that wording in the respects which we conclude warrant the construction that the phrase does not operate as a limitation on the coverage; and where there was applicable the rule applied in *Joslin v. National Reserve Ins. Co.* 201 Wis. 506, 230 N. W. 711, that in order to defeat

recovery on the ground of an increased hazard, it was incumbent on the insurer to establish that the insured had knowledge of the means or acts of the tenant by which the hazard was increased. As that rule is applicable here and the descriptive phrase, in question, must be construed as concluded above, it follows that the coverage afforded by the policies was not suspended at the time of the fire.

Defendant also contends that there is no credible evidence to sustain the court's finding that a hostile fire preceded and caused the explosion; and in this connection defendant claims that the burden of proof was upon plaintiff to establish the existence of an antecedent hostile fire. In relation to these issues it must be noted, in addition to the facts stated above, that no witness, who testified, was nearer to the premises than four blocks when he first saw the fire or heard the explosion, and none of them saw or took notice of events preceding the explosion; but that there was evidence which, although it was largely circumstantial, warranted the court in finding the following facts: The man, woman, and child, who occupied the premises up to February 27, 1937, were in the dwelling when the fire began and left hurriedly, leaving the furniture and other personal belongings behind them when it became apparent that the fire was out of control, and they could no longer remain safely in the building, and in departing so hurriedly they failed to take the hastily wrapped shaving outfit, and dropped the child's shoes in the garage. But none of them appears to have been seriously injured, and there were no blood stains or other evidences of injury on the premises. They had made a "clean get-away" within a few minutes after the explosion occurred, when witnesses began to arrive. The explosion occurred on both the second and first floors of the house, as is shown by the fact that it blew out practically all the windows, including the sash, on both floors. Some roof boards and part of a gable with a piece of sash attached, which were blown off the house and found some distance from it, were partly burned, although

there was no evidence of any other burned material lying near them on the ground from which those wooden parts could have become ignited after falling there. These facts fully warranted the court's findings that the roof boards and parts of the gable and sash had started to burn before the explosion occurred; and that the occupants were awakened and hastily prepared to escape, and did so after the fire had broken out, but before the explosion occurred which caused damage amounting to $925.26. Consequently, there was ample evidence to sustain the court's findings that a hostile fire preceded the explosion, and as there is no similarly convincing proof to the contrary, the court was fully warranted in finding as it did, even if the burden of proof to establish that the explosion was preceded by a hostile fire was upon the plaintiff, as defendant contends.

*By the Court.*—Judgment affirmed.