FAYLE, Respondent, *v.* CAMDEN FIRE INSURANCE ASSN., Appellant.

(No. 6,446.)

FAYLE, Respondent, *v.* NEW YORK UNDERWRITERS' INSURANCE CO., Appellant.

(No. 6,447.)

(Submitted May 22, 1929.   Decided June 17, 1929.)

[278 Pac. 509.]

Mr. R. F. Gaines, for Appellants, submitted briefs and argued the causes orally.

250

*Mr. N. A. Rotering,* for Respondents, submitted a brief and argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

These are appeals by the defendant insurance companies from judgments in favor of plaintiff. The cases were tried together in the court below and were argued here as one. This opinion will suffice for both.

Fayle, the plaintiff, owned a house in Butte which he insured against fire, one policy having been issued by the Camden Fire Insurance Association and the other by the New York Underwriters' Insurance Company. Fayle lived in the house until the middle of October, 1926, when he rented it to Shutey, his brother-in-law, who followed Fayle immediately in possession. Shutey was a miner working at the Original Mine.

The house was used for residence purposes only by Fayle and there seems to be no reasonable doubt that it was rented to Shutey for like purposes, and that Shutey was living in it

with his family when the fire occurred. Having delivered possession of the house to Shutey, Fayle went to Madison county to live.

There was a cellar under the house which could be reached by a passageway commencing on the back porch. The evidence indicates that some time after Shutey went into possession he enlarged the cellar and constructed therein a ninety-gallon still, by the use of which he manufactured moonshine whisky. Fayle did not know anything about the still nor the manufacture of whisky by Shutey until after January 5, 1927. On the afternoon of that day an explosion occurred in the cellar of the house, the force of which was sufficient to tip over a piano and other furniture, to bulge the floor of the living-room, to partially knock down the chimney extending above the roof of the house, and to break most of the glass window panes out of the back porch. Neighbors, alarmed by the noise of the explosion, went to the house. They saw smoke and steam coming from the cellar. Entering the cellar they observed a fire in the furnace, which was identified as being a portion of the still. The cellar was full of smoke and steam. The neighbors put out the fire. Members of the police department arrived. They took the still away and when they left there was no fire in the cellar. Such direct evidence as there is upon the point indicates that the still was heated with wood. The explosion may have been caused by an accumulation of steam in some portion of the still. There is no doubt that the still was in operation when the explosion occurred. Some ten or twelve hours after the explosion and many hours after the police had taken away the still, the house burned completely. There is nothing in the record to indicate the source of the fire.

The policies are substantially alike. The one issued by the Camden ''does insure   *   *   *   against all direct loss or damage by fire except as hereinafter provided, to an amount not exceeding One Thousand Dollars,'' the property ''  *   *   *   while kept only for dwelling house purposes,   *   *   *  . This

entire policy, unless otherwise provided by agreement indorsed hereon, or added hereto, shall be void * * * if the hazard be increased by any means within the control or knowledge of the insured * * * or if any change other than by the death of the insured takes place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process or judgment or by voluntary act of the insured or otherwise * * * or if (any usage of trade or manufacture to the contrary notwithstanding) there be kept, used or allowed on the above-described premises benzine, benzole, * * * gasoline * * * or other explosives.''

What will be said applies to both cases.

Plaintiff's complaint in effect charged that the policy was in force; that his dwelling-house was destroyed by fire; that he had furnished all notices and proofs of loss required under the policy, and the defendant had refused to pay.

The answer, after certain admissions and denials, set forth excerpts from the policy, including that hereinabove quoted, alleged the tenancy between plaintiff and Shutey, that the tenant placed the still in the property and the still was used and was being used by the tenant with the authority of, and with the knowledge of, plaintiff, in the manufacture of distilled liquor of alcoholic content, in violation of the laws of the United States; that in connection with the use of the still gasoline or some other explosive was utilized for fuel and explosive gases were generated and that by using the still the building ceased to be used for dwelling-house purposes only, but was occupied and used in part for manufacturing purposes, by reason of which fact the fire hazard incident to the occupation of the premises was increased by means within the control and knowledge of the insured, and that the provisions of the insurance contract binding upon the plaintiff were breached by him and by and with his consent and knowledge; that about January 5, 1927, and in the afternoon of that date, and as a result of the use and operation of the still an ex-

plosion occurred, partially wrecking and destroying the building and thereafter on that date, or early in the morning of the day following, fire broke out in the premises causing damage thereto. Plaintiff replied to the answer. The jury found for the plaintiff in each case.

There is no evidence to sustain the defense that gasoline or some other explosive was used to heat the still or that the explosion resulted from any such; nor is there any evidence tending to show that any benzine, benzole, gasoline or other explosive was kept, used or allowed upon the premises. The provision of the policy relating to these substances (rigid in its operation) therefore has no further application to the questions before us.

We now turn to a consideration of the defense that by reason of the operation of the still the building ceased to be used for dwelling-house purposes only and was used in part for manufacturing purposes, by reason whereof the fire hazard incident to the occupation of the premises was increased by means within the control and knowledge of the plaintiff.

It is provided that the policy shall be void "if the hazard be increased by any means within the control or knowledge of the insured." Thus "the policy recognizes that the risk may be increased without the knowledge of the insured, and as a result of something beyond his control; and the stipulation is that a forfeiture shall take place only in case the increase is within his control and within his knowledge." (*Royal Exchange Assurance of London* v. *Thrower*, 246 Fed. 768, 159 C. C. A. 70.) The policy contemplates a change of occupants, the only restriction being that this shall be "without increase of hazard." In other words, the contract recognizes the universal business of letting houses for hire.

We think the clauses we are considering must be construed together, and in order for the insurer to avoid the policy it must be shown that an increased hazard, then within the control or knowledge of the insured, or then contemplated by him, took place when the change in occupancy occurred. This con-

clusion is fortified by the general tenor of the policy. "The evident general policy of the insurance contract is to create a forfeiture only when the insured is to blame and it will not be assumed that this general policy is departed from with reference to a matter to which it ought peculiarly to apply unless that purpose is made manifest." (*Royal Exchange Assurance of London* v. *Thrower*, supra.)

The insurance company could have placed the point beyond doubt by the use of plain language, but it did not do so. On the contrary, an ambiguity is permitted to exist. The language of the policy is the language of the insurance company. It is a standard policy, "prepared by skilled lawyers retained by the insurance companies, who through years of study and practice have become expert upon insurance law, and are fully capable of drawing a contract which will restrict the scope of the liability of the company with such clearness that the policy will be free from ambiguity, require no construction, but construe itself." (*Montana Auto Finance Corporation* v. *British & Federal Fire Underwriters*, 72 Mont. 69, 36 A. L. R. 1495, 232 Pac. 198.) Consequently it is established as a "cardinal principle of insurance law that a contract of insurance is to be construed liberally in favor of the insured and strictly as against the insurer. (32 C. J. 1152.)" (*Park Saddle Horse Co.* v. *Royal Indemnity Co.*, 81 Mont. 99, 261 Pac. 880; *Royal Exchange Assurance of London* v. *Thrower*, supra.)

The forfeiture, if such there was, must have occurred when the change of occupancy took place. The question for decision, then, is, what was the status when the tenant took possession? (*Obermeyer* v. *Phoenix Ins. Co.*, 217 Ky. 590, 290 S. W. 500.) The evidence shows that the increase of hazard, if such there was, took place after the change was made. Fayle did not know anything about the still nor the operation thereof until after the explosion and fire. As before noted, there is no doubt that Fayle rented the house to Shutey for dwelling-house purposes and there is nothing to indicate

that, prior to the fire, he had any cause to believe that it would be used for any other purpose. This being true, the policy was not avoided by the act of Shutey in constructing and operating the still. The act was not within Fayle's knowledge and it cannot be said that it was within his control. (*Obermeyer* v. *Phoenix Ins. Co.*, supra; *Colker* v. *Connecticut Fire Ins. Co.*, 218 Ky. 124, 290 S. W. 1073.)

In accord with a recent decision of the supreme court of Washington in a case involving a similar policy and upon similar facts, we think the duty of Fayle went no further than that he would not rent the premises to anyone other than for dwelling-house purposes, and would not knowingly permit its use for any other purpose. Under such conditions Fayle is not chargeable with the manufacture of liquor in the house, even if Shutey, the tenant, used it for the manufacture of liquor and made that use one of the principal uses of the house. (*Ragley* v. *Northwestern Ins. Co.* (Wash.), 276 Pac. 537, citing *Nebraska & I. Ins. Co.* v. *Christiensen*, 29 Neb. 572, 26 Am. St. Rep. 407, 45 N. W. 924, and the two Kentucky cases supra. And see *London & Western Trust Co.* v. *Canada Fire Ins. Co.*, 13 Ontario L. Rep. 540, 7 Ann. Cas. 386.)

There is nothing to show when the still was placed in the cellar nor how long it had been in operation prior to the fire. It was wholly removed before the fire occurred. And there is nothing to show that it contributed even remotely to the cause of the fire. A respectable line of authorities asserts the principle that a temporary increase of hazard does not avoid a policy where it has come to an end without loss and the loss occurs from another cause. (*Sumter Tobacco Warehouse Co.* v. *Phoenix Assur. Co.*, 76 S. C. 76, 121 Am. St. Rep. 941, 11 Ann. Cas. 780, 10 L. R. A. (n. s.) 736, 56 S. E. 654, and cases cited.)

It is argued that the court erred in instructing the jury, and we think this is true, but upon the facts the plaintiff is entitled to judgment and a verdict in favor of either of the defendants could not be permitted to stand. We shall not

reverse a judgment in favor of the plaintiff based upon a verdict, even though the jury has been erroneously instructed, if, upon the facts, the plaintiff is, and the defendant is not, entitled to the judgment. While error has been committed, under the circumstances substantial justice has been arrived at, and the judgment will not be disturbed.

The judgments are affirmed.

ASSOCIATE JUSTICES MATTHEWS, GALEN, FORD and ANGSTMAN concur.