MARY EDITH PATTON *v.* KANSAS CITY LIFE INSURANCE COMPANY

(No. 7870)

Submitted May 8, 1934.   Decided May 15, 1934.

*Price, Smith & Spilman* and *J. M. Woods,* for plaintiff in error.

*Dillon, Mahan & White,* for defendant in error.

MAXWELL, JUDGE:

On this writ of error, awarded the defendant to a judgment against it for $2,555.04 on conditional verdict upon defendant's demurrer to the evidence, there is involved a double indemnity provision of a life insurance policy. Upon the death of the insured, the company without protest paid the face of the policy, $2,500, but denied liability for double indemnity.

The insured, Cecil M. Patton, plaintiff's husband, died February 24, 1933, of an injury received by him three days previously. The occurrences leading up to and involving the injury took place in the city of Lewisburg between nine and ten o'clock at night.

Patton and a man by the name of Fulwider met on a street. There followed an altercation resulting in Fulwider's striking Patton several blows with his fist. When Patton indicated that he had had enough, Fulwider left

the scene and walked rapidly to the office of a magistrate about two hundred yards distant. Patton followed and was heard by a witness to say, "I'll show you, I'll show you." Fulwider knew that Patton was following him but ignored the fact. Both men were unarmed. Upon reaching the magistrate's office, Fulwider entered and closed the door behind him. The magistrate was not present but Fulwider immediately announced to the four or five men there present (including a state policeman) that he had just had a fight and had come to submit himself to the magistrate. The policeman said he would call the magistrate, but at that instant a noise was heard as though somebody was bumping against the outside of the door. Fulwider quickly opened the door wide and left the office. The policeman was close behind him. The others followed. Just outside the door were Patton and Fulwider's father-in-law, Coffman. As Fulwider went out he said to Coffman, "This is my fight, you don't have to mix in it." Instantly he struck Patton in the face with his fist, knocking him over backwards. Patton's head struck the edge of a piece of timber which was being used to cover an excavation in the street. His skull was fractured and death followed.

Coffman died before the case came to trial. The supposition is that he, having seen the difficulty down the street, hastened to the magistrate's office and was undertaking to hold the door to prevent Patton from entering. As to whether Patton tried to strike him with his fist, the evidence is in conflict. Plaintiff's evidence denies this proposition; defendant's affirms it. Under the defendant's demurrer to the evidence the doubt on this point must be resolved against the demurrant.

"Upon a demurrer to evidence, the demurrant in this state is not held to waive any of his competent evidence; but, where it conflicts with that of the demurree, it will be regarded as overcome, unless it manifestly appears to be clearly and decidedly preponderant. He waives all objection to the credit of the testimony demurred to, admits all inferences of fact

that may be fairly deduced from the evidence, but only such facts as are fairly deducible, and refers it to the court to deduce such fair inferences." *Talbott* v. *Ry. Co.*, 42 W. Va. 560, 26 S. E. 311.

But even if it be considered that Patton was striking Coffman, nothing apparently serious was taking place. Coffman was about the same size as Patton and only fifty-three years of age. There is nothing in the record to indicate that he was not of normal vigor. Taking as true Fulwider's statement that he pushed Patton and Coffman apart, the justification for his immediately striking Patton does not appear.

Under the double indemnity article of the insurance contract, the defendant assumed double liability "if the death of the insured shall result, independently and exclusively of all other causes, from bodily injury, effected directly by external, violent and accidental means * * *." But there is a proviso that there shall be no liability under that article for death resulting from injury intentionally inflicted by another, or from any violation of law by the insured.

The defenses are that Patton's death was not accidental, but resulted from an injury intentionally inflicted by Fulwider, and from decedent's violation of law. These points will be considered in their inverse order.

If Patton's conduct immediately before he received the blow at the magistrate's door was unlawful, it was of such character as not to be suggestive of grave consequences. It was not such as in the ordinary course of events would have occasioned much injury to another or would have brought dire consequences to himself. The contractual clause which excepted the insured from protection of double indemnity if death resulted from violation of law by the insured must be interpreted in the light of usual and ordinary experiences of mankind. The causal connection must be plain. A narrow, constrained interpretation is not reasonable. A mild departure from the narrow path, such as in the ordinary course of human events would not be fraught with dire consequen-

ces, should not be seized upon in condemnation of the transgressor. Our case of *Martin* v. *Insurance Company,* 106 W. Va. 533, 146 S. E. 53, 56, involved a situation similar to the one at bar. Martin went to Dr. Brannon's office and accosted him with violent words. Brannon retired to his inner office and closed the door between his two rooms. Martin opened the door and entered the back room with a threat. Brannon shot him. The action was on the double indemnity article of Martin's insurance contract. The policy contained a provision that the double indemnity should not be payable if the insured's death should result from any violation of law by the insured. That condition was pleaded as a defense. We upheld recovery by the plaintiff. We were of opinion that the evidence was not such as "to compel a verdict that the insured's death resulted proximately from a violation of law by him." Judge Lively quoted with approval from *Murray* v. *Ins. Co.,* (N. Y.) 48 Am. Rep. 658, 660: "If the violation of law in which the deceased was engaged was trivial although calculated to some extent to excite opposition or resistance, but the taking of life was a result which no reasonable man could have contemplated as likely to follow the unlawful act, there would be no such relation between the act and the death that the former could be said to be the cause of the latter." Consult *Tabor* v. *Insurance Co.,* 104 W. Va. 162, 139 S. E. 656, 57 A. L. R. 968; *Lovelace* v. *Protective Ass'n.,* (Mo.) 28 S. W. 877. On these principles, we reach the conclusion that at the time plaintiff's decedent received the blow which resulted fatally, he was not engaged in unlawful conduct within the meaning of the contractual provision discussed.

Did Patton's death result from injury intentionally inflicted by Fulwider? That Fulwider did not intend to kill him seems obvious. The circumstances all indicate that consequences wholly unanticipated by Fulwider, and which would not have been anticipated by any other man in like circumstances, followed the delivery of the blow. In reason, we are persuaded, that, though

the blow was intentional, Patton's falling and striking his head against the sharp edge of a heavy timber was accidental. His death resulted from the accidental contact of his head with the timber and not directly from the blow by Fulwider. He could not reasonably have foreseen that the blow he was delivering would be followed by such disastrous consequences. Thus is negatived intent on his part to kill Patton.

Of the many cases to which we have been referred, the one most clearly in point is *Union Accident Company* v. *Willis,* (Okla.) 145 Pac. 812, L. R. A. 1915D, 358. There, the insured, walking on a public street, was struck in the face by another and knocked down. Death resulted from his head striking the pavement. Under the policy, no indemnity was to be paid for "injuries * * * intentionally inflicted upon the insured by himself or some other person." The court held that though the blow was intentionally inflicted, the fatal result was not. Recovery by the beneficiary under the policy was upheld. This analysis, in our opinion, is founded in reason. By way of accentuation of the principle involved and presenting contrasted facts, we note the case of *Matson* v. *Insurance Co.,* (Me.) 45 A. 518, 74 Am. St. Rep. 368. A provision of the policy there involved excluded "intentional injuries, inflicted by the insured, or by any other person, except burglars, or robbers." The insured, without fault on his part, was violently assaulted by another person who intended to injure him. Recovery under the policy was refused by the court.

In the light of the principles stated and authorities cited, the defendant's initial proposition that Patton's death was not the result of an accident is not well taken.

For us to attempt a discussion of any considerable number of the many cases cited by able counsel in their exhaustive briefs would protract this opinion to unjustifiable length. Other than the above mentioned cases of this jurisdiction, we think that the *Willis* case, already discussed, is most in point of all the cases cited by the plaintiff in support of her contention. The cases

relied on by the defense are distinguishable in principle or on the facts.

With this background, we affirm the judgment of the trial court.

*Affirmed.*