Hillsborough, } No. 3559.
Feb. 5, 1946. }

MABEL M. NEWELL *v.* JOHN HANCOCK LIFE INSURANCE CO.

*McLane, Davis & Carleton* (*Mr. Carleton* orally), for the plaintiff.

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Booth* orally), for the defendant.

PAGE, J.   It is plain that the policy affords double indemnity only if the insured meets his death because of accidental means.   The plaintiff takes the position that it could be found that the decedent met his death by accidental means as defined by the policy.   Whether or not this would be true if the policy used the words "accidental means" without qualification, we need not inquire.   What we have to decide is not whether there might be found an accidental means that is causal but whether there is evidence of such means which is causal "directly, independently, and exclusively of all other causes." Or the test might be put conversely.   Does evidence appear that the death was not caused "directly or indirectly, or wholly or partially" by causes excluded from coverage, either (1) "injuries intentionally inflicted" on the decedent, or (2) injuries flowing from a violation of law by the decedent?

The insured died on March 4, 1943, as the result of injuries sustained during an altercation that day with one Palmer, a truck driver. Newell was Palmer's foreman.   The two men had never got along well together.   Palmer, at Newell's direction, was reluctantly loading

building supplies on a truck, and Newell was literally prodding him. As Palmer carried a piece of Akron pipe down a stairway, Newell followed, physically pushing him. Palmer expostulated. Reaching the foot of the stairs, Newell told Palmer that he was "through," to go home. Palmer suggested that they go outside and "settle it," where there was more room. Replying that he did not have to go outside, Newell took off his coat, put up his fists, and started for Palmer. Palmer dropped the Akron pipe and struck Newell in the jaw with either his fist or the heel of his hand. Newell fell to the floor and sustained a broken skull, from which he died.

These facts are undisputed. Only two witnesses testified to the altercation, Palmer and another employee. They were in complete agreement that Newell pushed Palmer as they went downstairs, as to Palmer's invitation to Newell to go outside, and as to Newell's starting for Palmer "with his dukes up" before Palmer could drop the Akron pipe.

As to the issue whether indirectly or in any part death resulted from injuries intentionally inflicted on Newell by Palmer, the plaintiff, having the burden of proof of coverage, was bound to go before the trier of fact with some evidence to show that between the concededly intentional injury inflicted by Palmer and the death of Newell, there intervened some independent accidental means that deprived Palmer's blow of any causal effect, however indirect or partial. As to the burden of proof, see *Trepanier* v. *Insurance Co.*, 88 N. H. 118, 121; *Lamb* v. *Insurance Co.*, 88 N. H. 306; *Travelers Insurance Co.* v. *Greenough*, 88 N. H. 391; *Langelier* v. *Insurance Co.*, 91 N. H. 529, 531. As to the principle concerning intervening causal means, see *Simoneau* v. *Insurance Co.*, 89 N. H. 402.

In the *Simoneau* case, it is to be noted, the contract made no such exclusion of coverage as is here indicated. It is beyond question that even though Palmer had a doubtful intention to injure Newell seriously, much less to kill him, he did inflict on him an intentional injury as the result of which he died. Upon interpretation of the policy, it did not matter if the fatality was not contemplated or if the intentionally injurious act by Palmer was only indirectly or partially the cause of death. Coverage was excepted by the terms of the policy.

By similar reasoning, coverage was excepted because Newell's death, at least indirectly and partially, resulted "from his being engaged in any violation of the law." It is clear that he was engaged in an assault. There is no evidence that he acted in self defense, and any other engagement in a fight would be a violation of the law,

however self defense may stand. R. L., *c.* 455, *ss.* 22-24. What Newell did was done "knowingly; voluntarily and without error or mistake." It may be conceded that he did not foresee the "unexpected and sudden" effect. In that sense he died an accidental death. *McGinley* v. *Insurance Co.*, 88 N. H. 108, 109. But by the terms of the policy the defendant did not undertake to indemnify Newell doubly for a death in any wise or degree caused by his breach of the law. The result, however unforeseen, was not disproportionate to the fight in which Newell engaged in hot blood, and there is no reason in this case to infer from an unexpected result that something entirely independent of an expectable blow from his opponent caused Newell's death. *Simoneau* v. *Company, supra,* 408.

The plaintiff relies on *Patton* v. *Insurance Co.*, 115 W. Va. 40, which was a case where the insured, Patton, was killed in a fist fight whose history was nearly the same as that now under consideration. The court had reason to doubt that Patton's conduct was unlawful, but by way of virtual *dictum* discussed the question on the assumption that Patton was committing an assault. If so, the court thought that Patton's voluntary act was not proximately causal, because it was "of such a character as not to be suggestive of grave consequences." Therefore, "he was not engaged in unlawful conduct within the meaning of the contractual provision discussed." It does not appear that the Patton policy contained the words "directly or indirectly, or wholly or partially." If they had, perhaps the court would not have spoken so confidently about proximate cause. And the conclusion stated that if Patton engaged in unlawful conduct, that conduct was rendered lawful for purposes of the contract by the fact that he did not contemplate his ensuing death seems of doubtful validity. It apparently overlooks the intent that there shall be no coverage while and because the insured is engaged in unlawful acts, just as a later exception excludes coverage while the insured is engaged in war or in going down in a submarine or up in an aircraft. It would be incautious to say that there could not be a case where a man in the course of an illegal act might meet death, not in the least because he so engaged, but exclusively because of the intervention of some other independent cause. But this is not such a case.

The case of *Union &c. Company* v. *Willis*, 44 Okla. 578, is the converse, in some respects, of the *Patton* case. There Willis' opponent in a fight intentionally struck Willis, who fell, broke his skull, and died as a result. It was thought by the court that it made a difference that the opponent had *no* intention to kill Willis and no anticipation

of his death. The case, on its facts, is not authority for application to an exception where "death results, directly or indirectly, or wholly or partially." Moreover, it would be inconsistent for us to say that a voluntary act may not be causal, even though the result was not intended or anticipated. It may be. *Simoneau* v. *Company, supra,* 406. It clearly was in this case, and there is nothing to indicate the intervention of an independent sole cause.

The nonsuit was properly ordered. There is no occasion to consider the exceptions to the exclusion of evidence. They appear to have been waived.

*Judgment for the defendant.*

All concurred.