FRIEDA TERRY, Plaintiff and Respondent, v. NATIONAL
FARMERS UNION LIFE INSURANCE COMPANY, De-
fendant and Appellant.

No. 10063.

Submitted September 23, 1960. Decided November 18, 1960.

356 P.2d 975.

R. V. Bottomly, Great Falls, argued orally, for appellant.

Swanberg & Swanberg, Randall Swanberg, Great Falls, for respondent. Randall Swanberg argued orally.

MR. JUSTICE ANGSTMAN delivered the Opinion of the Court.

This is an appeal by defendant from a judgment rendered on a jury verdict in favor of plaintiff. The action was for recovery of $5,000 under double indemnity provisions of an insurance policy, the face amount of the policy having been paid.

Plaintiff is the widow of Charles Milton Terry, the insured.

The complaint sought recovery for accidental death under terms of the policy.

The death of the insured occurred as a result of a "fist fight" or altercation between one Meyers and the insured after first engaging in a short verbal argument. The fight arose during a card game. The two were about the same size and weight. The blows were struck by Meyers with the fist. No weapon, as such, was used, although chairs and pieces of wood were available. There were only three or four blows struck and these at very close range. The fight lasted only a matter of seconds. The deceased collapsed to the floor as if he had deliberately withdrawn from the fight at which time Meyers completely withdrew. Meyers and others in the room were unaware of any serious injuries and immediately left the room and "cashed in" their chips. Meyers then went home. A short time later

one of the witnesses to the altercation went back into the card room to check on Terry and found him hurt. He called for help, artificial respiration was applied but he was dead within minutes. The injury received was visible and was the cause of death. There is no question as to the cause of death being violent and external.

The policy contained these provisions:

"Accidental Death Benefit

"The Company agrees, subject to the following conditions and provisions, to pay ($5,000.00) Five Thousand and 00/100 Dollars in addition to the amount payable under the principal contract, to the Beneficiary or Beneficiaries named therein, if this Policy is in full force with all premiums hereon duly paid; upon receipt by the Company at its Home Office of due proof that *death resulted directly and independently of all other causes from bodily injury effected solely through external, violent, and accidental means,* of which, except in case of drowning or internal injuries revealed by autopsy, there is a visible contusion or wound on the exterior of the body, and that such death occurred within ninety days after sustaining such injury. The Company shall have the right and opportunity to examine the body and to make autopsy unless prohibited by law.

"General Provisions

" (a) This benefit does not cover death caused or contributed to directly or indirectly, wholly or partly, by: disease or bodily or mental infirmity or medical or surgical treatment thereof; infection of any nature unless such infection is incurred through an external visible wound sustained through violent and accidental means; poisoning, inhalation whether voluntary or involuntary of gas or fumes from an internal combustion motor; self destruction whether sane or insane; *injury intentionally inflicted by another person;* any act of war; a state of insurrection; participating in a riot, or travel or flight in or descent or falling from or with any species of aircraft except while a

fare-paying passenger of a commercial airline flying on a regularly scheduled route between definitely established airports.''

There are only two legal questions presented upon this appeal. They are (1) whether under the foregoing policy terms, the death of the insured was ''accidental'', and (2) whether the death was caused or contributed to directly or indirectly, wholly or partly, by ''injuries intentionally inflicted'' by Meyers within the foregoing exclusion clause of the policy.

The beneficiary's theory of the case was that a death resulting from a fist fight, prompted by a trivial social cause, in which only the use of fists was contemplated and used, was a death resulting by accidental means, within the policy, even though the insured willingly engaged in it and even provoked the fight. Further, that the injuries received, resulting in death, were not injuries intentionally inflicted within the policy exclusion, where there was no evidence of intent to inflict injuries of such breadth and magnitude as those actually inflicted.

The trial court followed this theory in instructing the jury. The jury found a special verdict as follows:

''Do you find from a preponderance of the evidence that Bruce Meyers intentionally delivered blows against Charles Milton Terry, and that in so doing Bruce Meyers or another person similarly situated could or should have believed or known that such blows might in the natural and probable course of events result in the injuries sustained by Charles Milton Terry?'' Answer ''No.''

The Insurance Company, on the other hand, urged the theory that an ultimate result of a fist fight, occurring by ordinary means though unexpected and unintended, is foreseeable and not an accident, where the act or the means preceding and producing the result was violent, voluntary and intentionally committed. And further that even if it be termed an accident that under the facts of this case the death was caused or contributed to, directly or indirectly, wholly or partly, by injuries

intentionally inflicted by Meyers under the terms of the policy and thus excluded.

The Insurance Company, by demurrer, motion for judgment on the pleadings, motion for nonsuit and objections to instructions, adhered to the foregoing theory.

As to whether the death was "accidental" within the terms of the policy, we think the analysis is well put in 26 A.L.R.2d 399, 402, 403, 427, where the author states:

"While general language used in some of the decisions might be taken to indicate the adoption of a harsher rule, the consensus of the cases seems to be that the mere fact that a person insured against accidental injury or death voluntarily and wrongfully assaulted another will not be sufficient to characterize as nonaccidental all possible injuries which he receives in the course of or as a consequence of his attack, but that such injuries may be regarded as accidental unless they were a natural or probable result of the insured's actions, reasonably foreseeable by him or by a reasonably prudent man in his position.

"The at least superficially inconsistent results reached in many of the cases are explainable, not on the basis of any disagreement as to the general terms of the rule stated, but on the court's varying ideas as to the degree of foresight which should be exacted from the insured. Some of the cases, especially the earlier ones, apparently take the view that whenever personal violence is offered by one person to another, almost any degree of violence can reasonably be expected in return, while other decisions have adopted the view that the insured may reasonably suppose that the resistance of the person attacked will be in some degree adjusted to the nature of the offense offered, and that the attacker is not bound to expect that extreme results will follow from merely trivial provocation.

"If actual foreseeability is to be the test, it would seem that the issue is one of fact, to be answered in the light of the cir-

cumstances of the individual case, and such seems to be the view taken in most of the recent cases. * * *

"Where neither of the combatants is armed, and the attack made by the insured contemplates only an ordinary fist fight or personal combat, there is much more room for argument as to whether the insured should be charged with the necessary anticipation of possibly fatal results. While several of the earlier cases took the attitude that fatal results were a natural and probable consequence of such an assault, in the more recent cases it appears that in such a situation a question for the jury as to whether the fatal injury was a reasonably foreseeable consequence is, at most, presented."

And on page 427, § 6 of 26 A.L.R.2d, it is said:

"Where, in initiating an altercation, the insured contemplated only an encounter carried on with nature's weapons, and there was nothing to indicate that the person attacked would do more than retaliate in kind, and, in fact, no other retaliation was made, but the insured was nevertheless fatally injured, it has frequently been held that the death might be found to be accidental or the result of accidental means, on the ground that a *fatal* result is not a usual or foreseeable result of such a purely personal encounter." Emphasis supplied.

The case law in Montana is in accord with the views expressed in the foregoing statements from 26 A.L.R.2d.

In Lewis v. New York Life Ins. Co., 113 Mont. 151, 160, 161, 124 P.2d 579, 583, this court said: "We cannot, for example, as a matter of law say that the insured might not have intentionally pulled the trigger without realizing that the gun was loaded and without any intention to commit suicide. * * *

"Some argument is made by council for the defendant that in such situation the discharge of the gun would not be accidental. That contention finds no support in reason nor in law. While the act of pulling the trigger might have been intentional, the result in such a situation would be entirely unforeseen and unexpected, as is the situation in the hundreds of cases occurring

every year in which firearms, due to careless handling, are discharged resulting in the accidental death and injury of many persons. Strange and wonderful indeed are the circumstances in which persons are killed or injured by the intentional pulling of the trigger of an 'unloaded' gun, and it is clear that in such situations the discharge itself and the resulting injuries are accidental. See Tuttle v. Pacific Mutual Life Ins. Co., supra [58 Mont. 121, 190 P. 993, 16 A.L.R. 601] ; Dalbey v. Equitable Life Assur. Soc., 105 Mont. 587, 74 P.2d 432; Wills v. Midland Nat. Life Ins. Co., 108 Mont. 536, 91 P.2d 695.''

The Lewis case demonstrates, in accord with what appears to be the weight of authority, that an accidental result may follow an intentional act and be regarded as caused by accidental means.

We hold then, that the issue of "accidental means" under the terms of the policy was a jury question.

The second question is whether liability is excluded because of that part of the exclusion clause previously set out in full which reads:

''This benefit [double indemnity] does not cover death caused or contributed to directly or indirectly, wholly or partly, by: * * * injury intentionally inflicted by another person.''

The only statement made by Meyers leading up to the assault, and from which any intention could be drawn, was that Terry had better shut up or he, Meyers, would ''put him in a corner.'' There was no expression of an intention to inflict injuries. There was no indication to Meyers, or any of the bystanders that Terry had received any injuries when he went to the floor. To everyone present it was as if he had dropped to the floor to avoid further conflict.

We keep in mind that in construing an exclusion policy, in case of uncertainty, every doubt should be resolved in favor of the insured, and the policy should be construed strictly against the insurer company. Montana Auto Finance Corp. v. British etc., Underwriters, 72 Mont. 69, 232 P. 198, 36 A.L.R.

1495. Otherwise stated a contract of insurance will be construed strictly against the insurer and liberally in favor of the insured. Libby Lumber Co. v. Pacific States Fire Ins. Co., 79 Mont. 166, 255 P. 340, 60 A.L.R. 1; Park Saddle Horse Co. v. Royal Indemnity Co., 81 Mont. 99, 261 P. 880; Fayle v. Camden Fire Ins. Ass'n, 85 Mont. 248, 278 P. 509; Cacic v. Slovenska Narodna, etc., 102 Mont. 438, 59 P.2d 910.

■ Likewise, we keep in mind that the burden of proof in establishing that the injuries resulting in, or contributing to, death were intentionally inflicted within the meaning of an exclusion clause, such as we have here, is on the insurer. Note in 56 A.L.R. 696. The presumption is that such injuries were not intentionally inflicted. Olson v. Southern Surety Co., 201 Iowa 1334, 208 N.W. 213; Stevens v. Continental Casualty Co., 12 N.D. 463, 97 N.W. 862.

In 1 Appleman, Insurance Law & Practice, § 483, p. 592, it is said:

"Under principles of liberal construction, the courts, have in many instances, held that if the assailant did not intend to cause death, particularly where the injury was such as ordinarily would not cause death, even though the assailant intentionally caused injury to the insured, recovery would not be denied."

The court in Jefferson Standard Life Ins. Co. v. Myers, 256 Ky. 174, 180, 75 S.W.2d 1095, 1098, stated the applicable rule as follows:

"* * * To exempt the company from liability, the intention of the other must be to commit the injury or cause death as well as to do the act, and must be directed toward the insured — conduct intentionally directed toward injuring or killing him."

In the instant case, the fact is clear that Meyers did not intend to inflict fatal injuries on the deceased. Actually there is no evidence, other than the act of striking deceased, that he intended to inflict any injuries upon him. The jury found by its special verdict that Meyers did not intend the *result* of the blows.

The court instructed as to the exception clause along with the reasoning of the beneficiary expressed in her brief as follows: "* * * if in a given situation, [such as here] the result of an intentional act is, when contrasted by its dire, unforeseen and unexpected character, to be regarded as a result happening by 'accident' or by 'accidental means' then that same rationale must lead a court to hold, upon the same facts and in the same situation, though judged from the standpoint of the other participant, that fatal injuries inflicted by one, such as Meyers, upon another, such as Terry are not injuries 'intentionally inflicted' unless the inflicter could have reasonably foreseen that injuries would ensue of the breadth and scope of those inflicted."

In Couch on Insurance, § 1240, note 42, it is said:

"Where the policy does not cover injuries or death inflicted or caused by the intentional act of any person, the question of intent is for the jury, where the evidence is such that reasonable men might differ."

A case somewhat similar to this case was that of Union Accident Co. v. Willis, 44 Okl. 578, 582, 585, 145 P. 812, 814, L.R.A. 1915D, 358, where the deceased was struck a blow with the bare fist, knocked down, and his head struck the pavement causing his death. The court held there was liability. It pointed out that no deadly weapon was used which might be reasonably calculated to produce death; that there was no motive shown for the killing, and the means used indicated only an intention to strike the insured. The court said:

"The result was unforeseen and unusual, and not such as would ordinarily follow a blow with the fist. It was not the logical result of a deliberate act, and could not reasonably have been anticipated by Keys, and he cannot be charged with a design of producing it. * * *

"The death of the insured not having been intended by Keys, and being an unforeseen and unusual result of the blow struck, the insurer is not relieved of liability on account of the fact that

the blow itself was intentionally inflicted. The words 'intentionally inflicted' in this case should be construed to refer to the fatal injuries resulting from the fall, and not to the blow."

The above case was followed in the later case of Mid-Continent Life Ins. Co. v. Dunnington, 177 Okl. 484, 60 P.2d 1047, where a blow with the fist produced loss of the sight of an eye. And see also Lincoln Health & Accident Ins. Co. v. Cooper, 175 Okl. 467, 52 P.2d 1049.

In Olson v. Southern Surety Co., 201 Iowa 1334, 1344, 208 N.W. 213, 217, a case somewhat similar to that here, the court said:

"* * * The intention in our opinion must be to commit injury, as well as to do the act, and must be toward the insured — conduct intentionally directed to injuring him. [Citing cases.] We are of the opinion that the cause, nature, extent and effect of the injuries were matters of inference for the jury to draw, and were not for the determination of the court, as conclusions of law."

In Allen v. Travelers Protective Ass'n, 163 Iowa 217, 226, 143 N.W. 574, 577, 48 L.R.A.,N.S., 600, the court had before it the question of whether injuries resulting in death were intentionally inflicted and the court there said:

"Such intent could be ascertained only by inference from the circumstances shown. The question of intent is usually and peculiarly a jury question. * * * Inasmuch as the burden was upon the defendant, a verdict could not be directed in its favor without holding that it had proved the intent affirmatively and conclusively. It is the exceptional case where the court can properly direct a verdict in favor of the party having the burden of proof. And this is especially so where a vital fact is sought to be established only by inference from attending circumstances." To the same general effect are Nerrow v. Pacific Mut. Life Ins. Co., Mo.App., Kansas City, 1927, 294 S.W. 97; and Linnen v. Commercial Casualty Co., 152 S.C. 450, 150 S.E. 127.

There are cases taking the view that the intentional act of striking is sufficient to show, as a matter of law, that the resulting injury was intentionally inflicted. Compare Traveler's Protective Ass'n v. Weil, 40 Tex.Civ.App. 629, 91 S.W. 886.

We do not agree with the cases so holding in a case such as this where no weapon was used other than the bare fist and where as here the circumstances do not indicate an intention to inflict injuries.

We hold that the question was properly submitted to the jury and that its verdict, under the circumstances here shown, should be upheld.

Were we to hold with those cases which hold that the intentional striking of one person by another is sufficient to show intentional injuries as a matter of law, defendant's position would be no better.

Construing the contract strictly against the insurer and liberally in favor of the insured, as we must, it is not sufficient to relieve defendant of liability by the bare fact that Meyers intentionally inflicted injuries upon Terry. In order that intentional injury under the policy of insurance should relieve defendant of liability, the intent must be to inflict such injuries as may be reasonably calculated, "directly or indirectly", "wholly or partially", to result in or contribute to death.

The intent to injure in order to relieve of liability must be the intent to inflict such injuries as may reasonably be foreseen as likely to produce or contribute to death, directly or indirectly, wholly or partially. Order of United Com. Travelers of America v. Singletary, 111 Fla. 248, 149 So. 480; Brooks v. Continental Casualty Co., 13 La. App. 502, 128 So. 183; Union Accident Co. v. Willis, supra; Appleman, Insurance Law & Practice, supra; Jefferson Standard Life Ins. Co. v. Myers, supra.

There is no direct evidence of such intent here, and there was no prejudice resulting from the giving of the instructions complained of which presented that phase of the case.

The judgment is affirmed.

MR. JUSTICE ADAIR and THE HONORABLE LESTER H. LOBLE, District Judge, sitting for MR. JUSTICE BOTTOMLY concur.

MR. JUSTICE CASTLES dissenting in part.

I concur in that part of the majority opinion which holds that the issue of "accidental means" under the terms of the policy was a jury question.

I dissent from the holding that the double indemnity exclusion clause does not apply. To quote from the majority opinion:

"* * * it is not sufficient to relieve defendant of liability by the *bare fact that Meyers intentionally inflicted injuries upon Terry.*" Emphasis supplied.

The clause reads: "This benefit [double indemnity] does not cover death caused or contributed to directly or indirectly, wholly or partly, by: * * * injury intentionally inflicted by another person."

"*The bare fact that Myers intentionally inflicted injuries upon Terry*" is exactly what is excluded.

This court, under the guise of resolving doubts in favor of the insured, is doing violence to the plain unequivocal language of the policy and has the effect of torturing the meaning beyond its legitimate import. Travelers' Ins. Co. v. McCarthy, 15 Colo. 351, 25 P. 713, 11 L.R.A. 297. We should not rewrite a policy for persons, *sui juris,* in favor of the insured. Sullivan v. Metropolitan Life Ins. Co., 96 Mont. 254, 29 P.2d 1046.

The fact is conclusive that the insured died as a result of injuries inflicted by Meyers. Under the policy exclusion above, was it required for recovery that Meyers intended such a disastrous *result?* It is clear that Meyers did not so intend, but he did engage in fisticuffs; he did intentionally strike the blows; and the blows did produce the injuries which caused the death. The jury found by its special verdict that Meyers did not intend the *result* of the blows. But this is immaterial since the blows

were intentionally struck and contributed to, indirectly at least, and wholly to the death of insured.

The court instructed, as stated in the majority opinion, as to the exception clause, along with the reasoning of the beneficiary expressed in her brief, as follows:

"* * * if in a given situation, [such as here] the result of an intentional act is, when contrasted by its dire, unforeseen and unexpected character, to be regarded as a result happening by 'accident' or by 'accidental means' then that same rationale must lead a court to hold, upon the same facts and in the same situation, though judged from the standpoint of the other participant, that fatal injuries inflicted by one, such as Meyers, upon another, such as Terry, are not injuries 'intentionally inflicted' unless the inflicter could have reasonably foreseen that injuries would ensue of the breadth and scope of those inflicted."

The statement above leaves out somewhat significantly, the addition of the phrase, "caused or contributed to directly or indirectly, wholly or partly, by * * * injury intentionally inflicted by another person". We think this phrase, if it means what it clearly says, eliminates any necessity to look to the intention of the inflicter as to the *result* of his act. And, thus, in the instant case, even though the death was by accidental means, it was excluded as caused or contributed to, directly or indirectly, wholly or partly by intentionally inflicted injuries.

In Newell v. John Hancock Life Ins. Co., 94 N.H. 26, 45 A.2d 579, 581, 166 A.L.R. 1111, it was held that under a somewhat similar exclusion as here, that "* * * upon interpretation of the policy, it did not matter if the fatality was not contemplated or if the intentionally injurious act by Palmer was only indirectly or partially the cause of death. Coverage was excepted by the terms of the policy." The Newell case was cited with approval in Home Beneficial Life Ins. Co. v. Partian, 205 Md. 60, 106 A.2d 79, a Maryland case in which the exact exception clause as in the instant case was referred to, although not ruled upon.

Encyclopedia authorities differ somewhat on the rules stated. In 29A Am.Jur., Insurance, § 1198, pp. 339, 340, it is said:

"By the weight of authority an intention to cause death or inflict the specific injury which is suffered by the insured is not essential to the applicability of an exception in case of injuries intentionally inflicted upon the insured or of injuries which are the result of an intentional act, at least if the act which causes the injury or death was intentionally directed against the insured. Thus, this conclusion has been reached where the insured was intentionally struck in the face by another person, who did not intend to kill him, and fell backward, striking his head on the pavement and fatally fracturing his skull, the injury to his face by the initial blow not being serious. [Citing Ryan v. Continental Casualty Co., 94 Neb. 35, 142 N.W. 288, 48 L.R.A. (N.S.) 524, Ann.Cas.1914C, 1234.] There is, however, authority to the contrary; [Citing Union Accident Co. v. Willis, 44 Okla. 578, 145 P. 812.] and there are some cases holding such a provision inapplicable where the act itself was not intentionally directed against the insured."

This same statement with authorities appears in 56 A.L.R. 685, 690.

On the other hand, in 45 C.J.S., Insurance, § 772, pp. 801, 802, it is said:

"Where a provision of the policy excludes intentional injury, it is the intention of the person inflicting the injury that is controlling; and to come within the exception, the act which causes the injury must be wholly intentional, not merely partly so. While there is some authority to the contrary, it is the general rule that the necessary intent must be to inflict the injury actually inflicted * * *. It has been held that where death ensues from the injury it is necessary that the person inflicting the injury should have had the intent to kill * * *."

Of all the cases cited for this proposition, I find none of them which has an exclusion clause like the one under discussion, and

in many of them there were fact disputes. Such is also true of the cases cited in the majority opinion.

The majority opinion is clearly wrong in law. In effect, it holds that it is against public policy to write such an exclusion clause in low cost premium insurance policies, and that this court will ignore words plainly written in construing them. If this should be desired and could be accomplished as a public policy, it should be a legislative matter and not for this court.

For the foregoing reasons, I dissent to that portion of the majority opinion discussed.

MR. CHIEF JUSTICE HARRISON:

I concur in the dissent of Mr. Justice Castles.