**MONTANA RAIL LINK, Plaintiff,**

v.

**LEXINGTON INSURANCE COMPANY, a Delaware corporation, Defendant.**

**No. CV 00–127–M–DWM.**

United States District Court, D. Montana, Missoula Division.

Dec. 5, 2001.

John P. Poston, Harrison, Loendorf, Poston & Duncan, PC, Helena, MT, for Montana Rail Link, plaintiffs.

L.D. Nybo, Conklin, Nybo, LeVeque & Murphy, PC, Great Falls, MT, for Lextngton Insurance, Company, A Delaware Corporation, defendants.

## ORDER

MOLLOY, Chief Judge.

### I. Procedural Background

A preliminary pretrial conference was held in this case on November 17, 2000. At that time, the damages issues were stayed. A motions deadline and a hearing were set on the coverage issue.

Defendant Lexington Insurance moved for summary judgment on April 30, 2001, stating that the motion would be supported by a brief within five days. That motion was not briefed and is not discussed here.

Plaintiff MRL moved for summary judgment on May 4, 2001. Lexington responded to the motion on May 21, 2001. The parties argued the merits of MRL's motion on June 21, 2001.

### II. Factual Background

On July 11, 1999, some MRL rail cars derailed and spilled their lading of asphalt, cans of Coors beer[1], soybean meal, and corn syrup into the Clark Fork River in Sanders County, Montana, at about mile marker 2.6. One derailed tanker car contained propane but did not spill. Where the accident occurred, the Clark Fork lies within 200 feet of the center of MRL's track, i.e., within its right of way.

Lexington paid for the cost of removing the tanker car from the river and paid the value of the lost lading. MRL seeks reimbursement under its policy with Lexington for the cost of removing and disposing of the asphalt and beer cans, the cost of tests to determine whether all asphalt had been removed from the river, and the cost of the local fire department's "flare-off" procedure for emptying the tanker car of propane before the car could be retrieved from the river. Pltf. Br. at 2, ¶ (3).

MRL and Lexington agree that all items of lading are covered by the policy. Lexington has already paid MRL the value of the lost lading. It refuses to pay costs MRL incurred in recovering the lading and in returning the river to something like its original state.

### III. Analysis

*A. The Policy*

The following property, in pertinent part, is covered by MRL's policy with Lexington:

5. Coverages:

This policy covers the Insured's interest in al [sic] property owned, used or intended for use by the Insured .... This policy also covers the Insured's interest in property of others ... in the In-

---

1. Ironically in this case "it's the water" that is in dispute.

sured's care, custody, or control ... as common carriers, contract carriers, warehousemen, or bailee.

This policy also covers the expense of debris removal, rerail, salvage, defense, and rerouting of insured property damaged by an insured peril.

This policy also insures contingent liability from the operation of any laws or orders governing the demolition, repair, or replacement of insured property damages by an insured peril. . . . [2]

. . .

Any expenses incurred by the Assured to recover, protect or preserve property shall include wrecker expenses incurred in connection with any occurrence involving rolling stock as covered hereunder; and expenses incurred for any charges made by an organized or voluntary fire department for services rendered in responding to a fire alarm due to fire on, in or exposing the property insured under this Section, including any damage to said fire department's apparatus;

Loss caused by acts of destruction at the time of and for the purpose of preventing the spread of fire, provided, that such fire did not originate from any perils excluded.

. . .

Pltf. Ex. 1 at 1–2.

The "perils" insured against are " 'all risks' of Direct Physical loss, damage, or *expense of covered property* as specified herein." Pltf. Ex. 1 at 3, ¶ 7 (emphasis added).

"Debris removal" is defined as follows.

This policy shall cover the following expenses resulting from a perils [sic] insured against:

I. the cost of removal of debris of property covered hereunder;

II. the cost of removal of debris of property not insured hereunder from the premises of the Insured.

Pltf. Ex. 1 at 11, ¶ 20(C).

The policy does not define the word "debris."

Endorsement No. 1 excluded coverage for seepage, pollution, or contamination:

SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION EXCLUSION Notwithstanding any provision in the Policy to which this Endorsement is attached, this Policy does not insure against loss, damage, costs or expenses in connection with any kind of [sic] description of seepage and/or pollution and/or contamination, direct or indirect, arising from any cause whatsoever.

Endorsement No. 1 also "extended" coverage for debris removal and cost of clean up:

DEBRIS REMOVAL AND COST OF CLEAN UP EXTENSION Notwithstanding the provisions of the preceding exclusion in this Endorsement or any provision respecting seepage and/or pollution and/or contamination, and/or debris removal and/or cost of clean up in the Policy to which this Endorsement is attached, in the event of direct physical loss or damage to the property insured hereunder, this Policy (subject otherwise to its terms, conditions, limitations, including but not limited to any applicable deductible), also insures, within the sum insured. [sic]

(a) expenses reasonably incurred in removal of debris of property insured hereunder destroyed or damaged from the premises of the Assured;

**2.** This paragraph is further defined at Pltf. Ex. 1, at 11, ¶ 20(B), but does not appear to have any bearing on the case.

and/or

 (b) cost of clean up, at the premises of the Assured made, [sic] necessary as a result of such direct physical loss or damage;

PROVIDED that this Policy does not insure against the costs of decontamination or removal of water, soil, or any other substance on or under such premises.

Pltf. Ex. 1, Endorsement No. 1, at 1.

Finally, the policy excludes coverage for expenses incurred under the order of a government agency, a court, or any other authority. Pltf. Ex. 1, Endorsement No. 1, at 2.

### B. Covered Property

█ The insured has the burden of proving coverage in the first instance. *Compare, e.g., Lewis v. New York Life Ins. Co.,* 113 Mont. 151, 158, 124 P.2d 579, 581 (Mont.1942) (burden on insured to prove accidental death), *with Terry v. National Farmers Union Life Ins. Co.,* 138 Mont. 333, 339–40, 356 P.2d 975, 978 (Mont.1960) (burden on insurer to prove suicide exclusion).

█ MRL argues that the water of the Clark Fork River lies within its right-of-way and so is "premises" of the railroad covered under the policy. It concludes that, under ¶ 20(C)(II), "the cost of removal of debris of property not insured hereunder from the premises of the Insured" is covered. Lexington's coverage opinion letters, *see* Pltf. Ex. 3, 4, 5, adopt the same analysis. However, this analysis proceeds on two erroneous assumptions. First, the analysis presupposes that the Endorsement replaces the debris removal provisions of the policy. Second, as a consequence, the analysis presumes, in effect,

that debris removal must be linked with covered real property or "premises" of the Insured. The language of the policy provides no basis for those assumptions.

The policy covers, inter alia, "the cost of removal of debris of property covered hereunder." Pltf. Ex. 1 at 11, ¶ 20(C)(I). The asphalt, beer cans, and propane are themselves covered property under the policy: "This policy also covers the Insured's interest in property of others ... in the Insured's care, custody, or control ... as common carriers, contract carriers, warehousemen, or bailee." Pltf. Ex. 1, at 2, ¶ 5. Therefore, the cost of removing the debris of propane, asphalt, and beer cans from the river is covered under the policy, just as the cost of removing the tanker car is covered under the policy.[3] The policy does not require that the debris be removed from "premises" of the Insured.

Any reason to think that coverage would not apply would have to arise from Endorsement No. 1. The Endorsement states that the following costs associated with debris removal are covered:

 (a) expenses reasonably incurred in removal of debris of property insured hereunder destroyed or damaged from the premises of the Assured;
 and/or

 (b) cost of clean up, at the premises of the Assured made, [sic] necessary as a result of such direct physical loss or damage; ....

Pltf. Ex. 1, Endorsement No. 1, at 1.

These provisions apply to "the premises of the Assured" and therefore seem to restrict coverage to debris removal from real property in which MRL has an interest. Yet Endorsement No. 1 purports to "extend" coverage for debris removal. An

---

**3.** While the policy does not define the word "debris," there is no need in this case to distinguish it from lading. It would be absurd, for example, to hold that any tabs that came off the beer cans were debris but an intact can was not.

"extension" connotes an expansion of coverage. This connotation is confirmed by the Endorsement's language, which states that "Notwithstanding ... any provision respecting ... debris removal and/or cost of clean up in the Policy to which this Endorsement is attached ... this Policy ... *also* insures" the cost of removing covered property from the Insured's premises.[4] Pltf. Ex. 1, Endorsement No. 1, at 1.

In short, the provision titled "DEBRIS REMOVAL AND COST OF CLEAN UP EXTENSION" in Endorsement No. 1 does not replace ¶ 20(C) of the policy. It extends ¶ 20(C). Paragraph 20(C) provides coverage for "the cost of removal of debris of property covered hereunder." The asphalt, beer cans, propane, and tanker car are property covered under the policy. Consequently, the cost of removing their debris (or removing them when they become debris) is covered under the policy.

Lexington attempts to avoid this conclusion by starting from the principle that the policy insures property, not liability. Lexington argues that MRL's attempts to clean up the river were hedges against its liability. No doubt that is true, but it does not change the fact that MRL was also removing debris of covered property. The reason MRL wants to remove debris from its tracks in *any* case is arguably in part a hedge against the possibility that a car might derail and injure an innocent party. That does not mean that the policy's provision for coverage of expenses related to debris removal is invalid in toto; nor does it mean that MRL must turn to its liability carrier in proportion to its liability-protection motivation. If a car were to derail

and injure someone, MRL's policy with Lexington would still cover the cost of removing or rerailing the car and recovering its lading.

If the expenses are incurred in the process of debris removal, and if debris removal is covered under the policy, then MRL's motivation is not relevant, because the "perils" insured against include "expense of the covered property." Under the circumstances of this case, because the beer, asphalt, and propane were covered property, the cost of removing them is covered under the policy.

## C. Exclusions

 The insurer has the burden of proving that an exclusion applies. *Terry v. National Farmers Union Life Ins. Co.,* 138 Mont. 333, 339–40, 356 P.2d 975, 978 (Mont.1960). Coverage exclusions are narrowly construed. *Farmers Union Mut. Ins. Co. v. Oakland,* 251 Mont. 352, 356, 825 P.2d 554, 556 (Mont.1992).

 Lexington argues that MRL cleaned up the asphalt and performed hydrological tests to make sure the asphalt was gone as a hedge against its liability to the State or the EPA for an environmental clean-up. Because the policy excludes coverage for decontamination costs, Lexington argues that MRL is not entitled to indemnity for its costs in removing the asphalt from the river.

MRL responds that no contamination was found. It also points out that Lexington's argument seems to depend on where the debris is when it comes to rest—on land, it's debris, but in water, it's contamination. The policy contains no such lan-

---

4. Under this reading, ¶ (b) of the debris removal extension is in effect identical to ¶ 20(C)(II). In view of the Endorsement's language of expansion, this redundancy does not mandate the conclusion that the Endorse-

ment replaces the corresponding policy provisions. At most, it creates an ambiguity, and ambiguities are construed against the drafter, Lexington.

guage. Nor does the policy differentiate between, for example, "harmless" lading and "hazardous" lading.

Under the circumstances presented in this case, MRL's attempts to "clean up" the river are not easily distinguished from its attempts to remove or recover the debris of its covered property. There was no finding of contamination, either formally or informally, by a public or a private entity. MRL's hydrological testing is difficult to distinguish from sending a worker out to look for beer cans. The expense of hiring the worker would be covered; so are the hydrological tests. Because asphalt can create unfortunate consequences in rivers does not necessarily trigger the exclusion language in the policy. This is especially so under the facts of this case where there is no "contamination" shown. The asphalt, as lading, remains covered property.

### V. Conclusion

The language of the policy, the facts stipulated to by the parties, and the narrow construction of exclusions indicate that the exclusion does not preclude recovery under these circumstances and that coverage applies. The point at which recovery of property becomes decontamination is best dealt with as a question of damages.

Accordingly, IT IS HEREBY OR-DERED that the Plaintiff's motion for summary judgment (dkt # 9) is GRANT-ED.

Defendant Lexington's unbriefed motion for summary judgment (dkt # 10) is DE-NIED.

IT IS FURTHER ORDERED that a telephone preliminary pretrial conference is set for January 4th 2002, at 9:00 a.m. Wherein a trial date and such other dates as are necessary for discovery will be set. Counsel are directed to notify Chambers no later than Friday December 14, 2001 of the telephone number at which each can

be reached at the time set for the phone conference